No. 91-091

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

          Plaintiff and Respondent,

-vs-

DONALD E. BRINER,

          Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Richard J. Carstensen, Billings, Montana

        For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Elizabeth L. Griffing, Assistant Attorney General
Dennis Paxinos, County Attorney; Terence M. Swift,
Deputy County Attorney, Billings, Montana

FILED

Filed: MAY 5 - 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs: April 3, 1992

Decided: May 5, 1992

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Donald Briner appeals his conviction on two counts of felony sale of dangerous drugs after a jury trial in the Thirteenth Judicial District Court, Yellowstone County. We affirm.

The issues are:

1. Did the District Court err in refusing to allow the defense to inspect Turner's statement to the police at the pretrial hearing?

2. Did the court err in denying Briner's request for a continuance when witness Turner was granted immunity?

3. Were the two packets of methamphetamine improperly admitted into evidence because there was no proof of chain of custody?

4. Did the court err in instructing the jury on the mental states of "knowingly" and "purposely"?

5. Does outrageous government misconduct bar this conviction?

6. Was the methamphetamine here involved properly designated a Schedule II dangerous drug?

In December 1988, Hal Turner, who described himself as having previously led a "life of crime" and who had been on parole since 1987, offered to become a confidential informant for law enforcement in Yellowstone County, Montana. Turner became an informant because he "wanted to change [his] life and [he] figured that was the best way to do it, doing something good finally."

2

Turner began working as an informant for Yellowstone County law enforcement in January 1989 and continued through September or October 1989. He also began working for the federal Drug Enforcement Administration at approximately the same time. The major drug bust operation in which Turner was involved was dubbed "Operation Snowball." Approximately seventy drug cases were involved in Operation Snowball, and Turner was involved in as many as forty to fifty of them. He was considered an extremely reliable informant.

Prior to working as an informant, Turner made a statement to the Drug Enforcement Division of Yellowstone County describing his acquaintances, the people from whom he had purchased drugs, and the people from whom he could purchase drugs in the future. Donald Briner was mentioned in this statement.

On July 28, 1989, the police initiated a drug purchase from Donald Briner. Two Yellowstone County deputy sheriffs met informant Turner at a parking lot in Billings. They searched Turner and his car for contraband, put a transmitter on him, and gave him some silver coins with which to make the purchase.

Turner was instructed to go to a local bar to attempt to make contact with Briner. He went to the bar but did not find Briner there. He then left the bar and drove by the deputy sheriffs, who told him to go to Briner's residence, a trailer located at the Big Sky Campground.

Turner went to Briner's trailer, knocked on the door, and entered the trailer. Inside, Briner sold Turner three and one-half grams of "crank," or methamphetamine. These activities were monitored by the deputies, who were listening to the transmitter about 300 yards from the trailer. Turner left the Briner residence, met the deputies at a prearranged location, and turned over the methamphetamine. The deputies then searched Turner and his vehicle again. A field test of the substance Turner purchased from Briner confirmed that it was methamphetamine. Testing at the State Crime Lab also showed that the substance was methamphetamine.

On July 31, 1989, a similar transaction took place. Two deputy sheriffs met Turner, searched him and his car, wired him with a transmitter, and gave him some silver. While being monitored, Turner went to Briner's trailer and purchased from Briner about two grams of a substance later identified both in a field test and by the State Crime Lab as methamphetamine. After leaving Briner's trailer, Turner went directly to a predesignated location where he gave the deputies the methamphetamine and where both he and his car were searched again.

Based upon the above evidence, the jury found Briner guilty of two counts of sale of dangerous drugs.

I

Did the District Court err in refusing to allow the defense to inspect Turner's statement to the police at the pretrial hearing?

4

The District Court held a pretrial hearing to consider a number of motions then before it. These included defense motions to dismiss the charges against Briner on grounds of entrapment and prosecutorial misconduct and to allow the defense access to a seventy-page statement Turner had given to the police. The principal ground argued for several of the motions was Turner's criminal activities during the time he was acting as an informant. Turner admitted to drug use, theft, trading drugs for sex, and violations of the terms of his parole, among other crimes, during the months he was acting as an informant for federal and state authorities.

The day before he testified at the pretrial hearing, Turner refreshed his memory by reading the seventy-page statement he had previously made to authorities. During his testimony he acknowledged that he had so used the statement. The defense requested that the statement be produced. After eliciting Turner's testimony that he had never before reviewed or signed the seventy-page statement, the court denied the motion to produce.

Briner's argument is based on Rule 612, M.R.Evid., which provides in part:

> If a witness uses a writing to refresh memory for the purpose of testifying, either
>
> (1) while testifying, or
>
> (2) before testifying, if the Court in its discretion determines it is necessary in the interests of justice,

5

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness
. . .

Briner claims that, in order to properly cross-examine Turner for purposes of the pretrial motions, he should have been allowed to examine Turner's seventy-page statement.

At the pretrial hearing, one issue before the court was whether the defense should be given access to Turner's statement. It would have been nonsensical to allow the defense access to the statement at the same hearing at which defense access to the statement was an issue before the court.

Under Rule 612, M.R.Evid., it is within the discretion of the district court whether, in the interest of justice, an adverse party should have access to a statement used by a witness to refresh memory. Briner has not specified anything in Turner's statement which would have aided his already extensive cross-examination of Turner at the pretrial hearing. Also, as a result of the pretrial hearing, the court granted Briner's motion for discovery of the seventy-page statement by Turner. After the hearing, and well before the trial in this matter, the defense was provided with a copy of the statement.

We hold that the District Court did not err in refusing to allow Briner's counsel to inspect Turner's statement at the pretrial hearing.

6

## II

Did the court err in denying Briner's request for a continuance when witness Turner was granted immunity?

On the third day of Briner's trial, the Yellowstone County Attorney's Office gave Turner a written immunity agreement in exchange for his testimony at the trial. The United States Attorney's Office likewise gave Turner a written immunity agreement. The defense asked the court to continue the case to give it time to prepare for "this new evidence that has just happened and has just been disclosed and changes completely . . . the thrust of the whole case." The court denied the motion.

Briner argues that his defense was based primarily on the cross-examination of Turner as to his credibility, because of the crimes Turner committed while he was working as an undercover agent and his claims that he had received no promises of help or immunity therefor. However, as the State points out, after Turner was granted immunity from prosecution, Briner's counsel was able to cross-examine Turner fully on his criminal activities. If anything, the grant of immunity aided the defense by allowing it to proceed with a thorough cross-examination of Turner.

Briner also argues that the court prejudiced him by refusing to grant a continuance to allow his counsel to prepare for cross-examination of Turner when Turner was granted immunity. The court

7

did allow a pause in the proceedings so that Briner's counsel could examine the agreements.

The immunity agreements were entered into evidence and Turner was cross-examined in general as to their terms. Turner testified that his attorney, not he, negotiated the specifics of the agreements. Briner does not explain what he would have gained from added cross-examination of Turner concerning the agreements.

We hold that the District Court did not err in denying Briner's request for a continuance when Turner was given immunity.

### III

Were the two packets of methamphetamine improperly admitted into evidence because there was no proof of chain of custody?

Briner contends that there were several fatal gaps in the chain of custody of the packets of methamphetamine he allegedly sold to Turner. The State did not offer testimony from the person who mailed the packets from the sheriff's office to the State Crime Lab in Missoula, the person who received them at the Crime Lab and mailed them back to the sheriff's office, or the person at the sheriff's office who received the packets from the Crime Lab and returned them to the evidence locker.

Briner cites State v. Carney (1986), 219 Mont. 412, 714 P.2d 532. In Carney, the evidence, a blood sample, was left in the open at a dispatcher's desk for some twelve hours before it was in official custody. The District Court exercised its discretionary

authority in ruling that a proper foundation had not been laid for introduction of the sample into evidence. The correctness of that ruling was not one of the issues considered on appeal.

In the present case, the time periods in question were after the methamphetamine was in official custody. The officer who received the methamphetamine from Turner testified that he marked and sealed the packets into which he placed it. A forensic scientist from the Crime Lab testified that she later broke those seals, tested the methamphetamine, and resealed the packets. At trial, the packets remained under the seals she had placed on them. Briner has not shown any evidence to overcome the resulting presumption that there was no tampering with the methamphetamine. State v. Armstrong (1980), 189 Mont. 407, 431, 616 P.2d 341, 355.

We hold that the District Court did not abuse its discretion in admitting the packets of methamphetamine into evidence.

IV

Did the court err in instructing the jury on the mental states of "knowingly" and "purposely"?

Briner argues that the definitions of "knowingly" and "purposely" as set forth in Montana statutes and in Jury Instruction No. 10 do not pass constitutional muster for definitions of intent sufficient to convict a person of a criminal offense. He recognizes that this issue has previously been presented to this Court and that the Court has consistently upheld the constitu-

9

tionality of the statutory definitions of "knowingly" and "purposely."  See State v. Sharbono (1977), 175 Mont. 373, 563 P.2d 61; State v. Beach (1985), 217 Mont. 132, 705 P.2d 94.

Briner states that this issue is raised for purposes of preservation for possible use in federal court.  Inasmuch as no argument has been made that this Court should overturn its previous holdings, we affirm the District Court on this issue.

V

Does outrageous government misconduct bar this conviction?

Briner argues that Turner's conduct, including drug use and other criminal acts during the months he acted as an informant, should preclude this conviction, which was based in large part upon Turner's testimony.  He asserts that the government's failure to monitor and control Turner violates a sense of justice.  Briner cites the doctrine of outrageous government conduct as recognized in various courts.

The doctrine of outrageous government conduct, as its name suggests, focuses on conduct of the government.  See, e.g., United States v. Stenberg (9th Cir. 1986), 803 F.2d 422, 429.  It is a "most narrow" defense.  United States v. Ryan (9th Cir. 1976), 548 F.2d 782, 789, cert. denied, 429 U.S. 939.  The government is not held accountable for unrelated criminal activity of an informant, especially when law enforcement was unaware of such activity.

10

United States v. Simpson (9th Cir. 1987), 813 F.2d 1462, 1470, cert. denied, 484 U.S. 898, appeal after remand, 927 F.2d 1088.

In this case, there was no evidence that government agents participated in Turner's criminal activity while he was acting as an informant. Nor was there any evidence that Yellowstone County authorities were aware of his illegal activities, other than two incidents of smoking marijuana which he reported to his probation officer. It is not claimed on appeal that Briner was entrapped or that the government engaged in brutality to or coercion of Turner to convince him to become an informant, or that Turner's illegal activities were related to his purchases of drugs from Briner while he was wired and closely monitored by officers. The audio tapes of those purchases were introduced into evidence.

Turner's illegal activities during the time he acted as an informant first came to light in December 1989 when he was no longer working as an informant and when he testified at a federal drug prosecution. The record does not support any connection between local law enforcement and Turner's illegal activities.

In no way do we condone Turner's illegal activities while he was acting as an informant. We hold, however, that this conviction is not barred under the doctrine of outrageous government conduct.

VI

Was the methamphetamine here involved properly designated a Schedule II dangerous drug?

11

Briner contends that possession of methamphetamine has been decriminalized in Montana because, following changes in federal law, the Board of Pharmacists did not reschedule methamphetamine under § 50-32-203, MCA. A similar contention was firmly rejected by this Court in State v. Meader (1979), 184 Mont. 32, 36-37, 601 P.2d 386, 388-89:

> While it is true that the schedules were not annually revised or republished, we cannot accept the argument that this failure to republish and revise resulted in decriminalization of marijuana and methamphetamine. . . [T]he Dangerous Drug Act does not indicate that the legislature intended the Board of Pharmacists to have the power, by inaction, to decriminalize the possession of all types of drugs and substances. Rather, we find that the legislature intended the original five schedules to be effective until such time as the Board and the Department took steps to carry out their statutory duties to revise and republish.

We hold that, under the same reasoning as in Meader, the absence of a timely revision of the schedules of dangerous drugs did not negate the status of methamphetamine as a Schedule II dangerous drug.

Affirmed.

Chief Justice

12

We concur:

_John Conway Harrison_

_Karla M. Gray_

_P. C. McDonough_

_____ Justices

May 5, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Richard J. Carstensen
Attorney at Law
P.O. Box 2093
Billings, MT 59103

Hon. Marc Racicot, Attorney General
Elizabeth Griffing, Assistant
Justice Bldg.
Helena, MT 59620

Dennis Paxinos, County Attorney
Terence M. Swift, Deputy
P.O. Box 35025
Billings, MT 59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy