Argued and submitted June 26, 1991, reversed and remanded May 20, reconsideration denied August 19, petition for review denied September 29, 1992 (314 Or 391)

# STATE OF OREGON,
*Appellant,*

*v.*

# STEPHEN TODD DEANGELO,
*Respondent.*

## (C891703CR; CA A66155)

830 P2d 630

Brenda J Peterson, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

William T. Lyons, Oregon City, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Defendant was charged with four counts of unlawful purchase of food fish. ORS 509.011. The state seeks reversal of a pretrial order dismissing the indictment. We reverse.

The facts are not in dispute. In response to reports that sport-caught salmon[1] were being sold illegally to caterers and restaurants, Oregon State Police (OSP) began an undercover operation in May, 1989. Officers contacted 73 caterers and restaurants, including defendant, whose names they selected from the yellow pages of the Portland telephone directory. OSP had no information that anyone that they contacted had made illegal sales or purchases of salmon.

An officer called each business on the list, identified himself as "Mark" and explained that he had fresh-caught spring chinook salmon for sale at $2.00 per pound. When he called defendant's business number, he reached a recorder. He left a message and a phone number and asked anyone interested in the fish to call. Defendant returned the call and left a message on "Mark's" recorder. "Mark" returned the call and, as described by the trial court:

> "The person answering summoned [defendant] to the phone and a conversation occurred wherein a deal was struck for the sale and purchase of the salmon. During this conversation 'Mark' asked [defendant] whether or not there would be any 'cops' waiting for him when he delivered the salmon and that he did not want to get 'busted.' Defendant indicated that there wouldn't be and that the salmon should be carried into his business in a black bag. It was clear from this conversation that defendant knew that the prospective sale of salmon was unlawful."

After completing the first purchase, defendant told "Mark" that he was interested in obtaining more fish. After that, he called twice about additional fish. Ultimately, defendant made four illegal purchases from the undercover officer and was indicted for the unlawful purchase of food fish.

Defendant moved to dismiss the indictment, asserting:

> "[W]hen the police mount undercover sting operations, before they target a particular individual, they must have a

---

[1] "Sport-caught salmon" refers to salmon that were not commercially taken.

reasonable suspicion that that particular individual is engaged in, or contemplating engaging in, that particular type of activity."

Defendant argued that the lack of reasonable suspicion in this case constituted either "entrapment as a matter of law" or outrageous police conduct, thereby violating his federal due process rights.

On the basis of a recent Ninth Circuit case holding that the government must have a reasonable suspicion before it targets an individual for investigation, the trial court decided that the police conduct was entrapment as a matter of law and dismissed the indictment. After the trial court dismissed the indictment, the Ninth Circuit vacated the opinion on which the trial court had relied:

> "[W]e vacate the part of the three-judge court's opinion which addresses whether the government need have 'reasoned grounds' to investigate a particular individual.
>
> "In partially vacating the three-judge court's opinion, we follow four of our sister circuits in explicitly rejecting a 'reasoned grounds' requirement for investigation of an individual under the due process clause." *United States v. Luttrell*, 923 F2d 764 (9th Cir 1991), *cert denied* ___ US ___ (1992). (Citations omitted.)

The United States Supreme Court has recently addressed entrapment in *United States v. Jacobson*, ___ US ___, ___, 112 S Ct 1535, 1540, 118 L Ed 2d ___ (1992), holding:

> "Where the Government has induced an individual to break the law and the defense of entrapment is at issue, * * * the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents."

In that case, the court overturned the conviction of a defendant contacted by postal and customs officials who had been informed that he had ordered from an adult bookstore two magazines containing pictures of nude children. Although that purchase was legal, the purchase of the identical magazines became illegal three months later. For 26 months thereafter, the defendant was the target of repeated mailings

from government officials operating as fictitious organizations. They sent surveys to determine his interests and opinions and then "mirrored" his responses by sending materials that

> "not only excited [his] interest in sexually explicit materials banned by law but also exerted substantial pressure on [him] to obtain and read such material as part of a fight against censorship and infringement of individual rights." *United States v. Jacobson, supra,* ___ US at ___, 112 S Ct at 1542.

The Supreme Court concluded that there was insufficient evidence to prove beyond a reasonable doubt that defendant's predisposition to commit the crime had existed before the many and varied government acts that were intended to create that disposition.

■ In explaining the limits of its opinion, the Supreme Court made clear that its decision was not intended to preclude the typical sting operation:

> "Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate 'sting' operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predeposition. *See United States v. Sherman,* 200 F.2d 880, 882 (CA2 1952). Had the agents in this case simply offered petitioner the opportunity to [commit the crime], and petitioner — who must be presumed to know the law — had promptly availed himself of this criminal opportunity, it is unlikely that his entrapment defense would have warranted a jury instruction." *United States v. Jacobson, supra,* ___ US at ___, 112 S Ct at 1541.

We do not read the opinion to require that a government agent have reasonable suspicion of wrongdoing before it may afford opportunities or facilities for the commission of an offense. We conclude that the lack of any reasonable suspicion that defendant was engaged in criminal activities does not mean that there was entrapment as a matter of law.[2]

---

[2] In his motion to dismiss the indictment, defendant did not argue that he was entrapped under ORS 161.275 or that the police conduct violated the Oregon

■ Defendant argues alternatively that the police conduct here was so extreme and outrageous that it violated his due process rights under the Fourteenth Amendment to the United States Constitution. We have held that "[a] criminal indictment may be dismissed when government conduct is so outrageous that it violates due process." *State v. McArdle/Harrelson*, 91 Or App 248, 254, 754 P2d 918, *rev den* 306 Or 528 (1988), *citing United States v. Ryan*, 548 F2d 782, 789 (9th Cir 1976), *cert den* 430 US 965 (1977). However, to constitute a violation of due process, the conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Ryan, supra*, 548 F2d at 789. As we stated in *State v. McArdle/Harrelson, supra*:

> "The outrageous government conduct defense has been restricted to extreme cases. It 'must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense.' *United States v. Jannotti*, 673 F2d 578, 607 (3d Cir 1982), *cert den* 457 US 1106 (1982). In essence, the due process argument has only been successful where the government essentially manufactured the crime." 91 Or App at 254.

■ In *United States v. Bogart*, 783 F2d 1428, 1436 (9th Cir 1986), the Ninth Circuit said that

> "law enforcement conduct * * * becomes constitutionally unacceptable 'where government agents engineer and direct the criminal enterprise from start to finish' or when governmental conduct constitutes 'in effect, the generation by police of new crimes merely for the sake of pressing criminal charges against the defendant.' "

The government conduct here was not so outrageous as to violate due process. OSP did not manufacture the entire crime or generate the crime merely to press criminal charges against defendant. It selected defendant's name from a list of restaurants and caterers whose advertising indicated that they sold fish. The officer offered to sell fish to defendant, implied that the sale was illegal and provided the fish. Defendant directed the officer on the manner of delivery. At defendant's request, OSP continued to provide fish after the initial sale. The government conduct here was not so outrageous

---

Constitution. He argued only that the police conduct violated the federal constitution.

that it "violates the universal sense of justice." Defendant's federal due process rights were not violated, and the trial court erred in dismissing the indictment.

Reversed and remanded.