NO. 93-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

JEAROLD K. WILLIAMS,

      Defendant and Appellant.

FILED

DEC 22 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William F. Hooks, Appellate Defender Office,
Helena, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
Patricia J. Jordan, Assistant Attorney
General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney,
Daniel L. Schwarz, Deputy County Attorney,
Billings, Montana

Submitted on Briefs:  September 30, 1993

Decided:  December 22, 1993

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Jearold K. Williams was charged by information in the District Court for the Thirteenth Judicial District in Yellowstone County with deliberate homicide, in violation of § 45-5-102(1)(a), MCA. On June 11, 1992, after trial by jury, he was found guilty of the crime with which he was charged. He was subsequently sentenced to a term of imprisonment for 60 years at the Montana State Prison. Defendant appeals from his conviction. We affirm the judgment of the District Court.

The following issues are presented by defendant on appeal:

1. Did the District Court abuse its discretion when it denied defendant's challenge to a juror for cause, and if so, did such abuse affect the outcome of defendant's trial?

2. Did the District Court err when it refused to instruct the jury on the lesser included offense of mitigated deliberate homicide?

### FACTUAL BACKGROUND

Defendant Jearold K. Williams was the legal guardian of, and had maintained a father and son type of relationship with Mark Reitler. According to the testimony at defendant's trial, he and Reitler were also in the drug business together. Defendant was the supplier and Reitler was the distributor.

On November 23, 1990, Reitler and two friends, David Wood and Fred Winters, went to defendant's home where, without his permission, they borrowed several rifles and then went hunting on defendant's property. During the course of that day, they consumed

substantial amounts of drugs, including methamphetamines, crank, and marijuana.

At about 5:00 or 5:30 p.m., Reitler and his companions finished hunting, went back to defendant's house, and returned the guns. While there, Reitler and defendant became involved in an argument over money that defendant said Reitler owed him for the sale of drugs. Defendant referred to the money as his profits and demanded that he be paid. When Reitler became angry with defendant, he and his companions left defendant's home. They dropped Winters off, and the other two went to Reitler's home.

When Reitler and his companion arrived at the mobile home in which Reitler lived, a number of people were present. Most of them had come there to purchase drugs and were waiting for Reitler to return home.

Reitler went to the back room of the mobile home where he and two other companions smoked some marijuana. While Reitler and two others smoked marijuana in the back bedroom, several others waited in the living room, which was toward the front end of the mobile home, with the intention of purchasing drugs.

The description of what happened next is consistent among all nine survivors who were present in the mobile home and who testified at trial.

Shortly after Reitler arrived home, defendant came to the home, visited shortly with the people assembled in the living room, and then went to the back of the home where Reitler was located. After they were there for a short period of time, the emerged and

moved to the kitchen, which was adjacent to the living room, where they argued about money that defendant complained he was owed by Reitler.

Reitler gave defendant an envelope full of money which he claimed included $2000, and demanded that defendant count it. Apparently, according to statements made at that time, the payment was $95 short of the amount Reitler owed defendant, but he said he would pay the balance the following day. He then told defendant to leave the home.

Defendant, who owned the mobile home and rented it to Reitler, said that he did not have to leave because it was his mobile home. The argument escalated and Reitler picked up the telephone to call the police. At that point, the two became involved in a shoving match and defendant said he was going to his car to get his gun. After defendant left the home through the front porch door, Reitler locked the door, tried to block it with a board, and went to the back of the trailer where he retrieved his rifle.

At about that time, the witnesses in the mobile home heard a shot from outside. One witness, who was located outside, said he observed Williams at the front door shooting into the door with his pistol.

When the shot from outside was heard, Reitler told the others who were present to get to the back of the mobile home. Some went to a bedroom located near the rear of the home. Others went out the back door. Apparently Reitler's call had gotten through to a 9-1-1 switchboard service, which immediately recorded what happened

4

thereafter. The State and defense stipulated at trial that the following conversation was recorded from the Reitler home: **"Mark,** see these? These are fucking real. Put the gun down or I will blow your fucking head **off."**

Those witnesses who had been present, but were now hiding in either the front bathroom or one of the two back bedrooms, heard several shots fired from defendant's pistol, and then either saw or heard two shots fired by Reitler as he attempted to retreat through the back door. The testimony was uncontradicted that several shots were heard before Reitler was observed firing his rifle. Later, investigation established that only two shots were ever fired from Reitler's rifle.

After the shooting stopped, those present went to the back door and found Reitler lying on the ground next to the back steps. Efforts to resuscitate him were unsuccessful, and he died from a bullet wound which was later determined to have been inflicted from the Ruger .357 Magnum owned by defendant.

Following the shoot-out, defendant was observed by at least one person from outside the home getting in a car with a pistol in his hand and speeding away.

Later that night he was arrested alongside Interstate 90 west of Billings, where his vehicle had run out of gas. The Ruger **.357** Magnum, which was later identified by forensics experts as the weapon which killed Reitler, was found in the back seat of his car.

Several witnesses testified that when defendant arrived at Reitler's home on the evening of the shoot-out he stated that he

wanted his money and if he did not get it, somebody was going to get killed. He stated that the bad part was that it was going to be his son. Defendant often referred to Reitler as his son.

On November 29, 1990, the State moved for and received leave to file an information in the District Court for Yellowstone County charging defendant with deliberate homicide for purposely and knowingly causing the death of Mark Reitler when he shot him on November 23, 1990. After three days of trial, the jury returned its verdict, finding defendant guilty of deliberate homicide.

I.

Did the District Court abuse its discretion when it denied defendant's challenge to a juror for cause, and if so, did such abuse affect the outcome of defendant's trial?

During jury selection, the fifteenth juror called was Kathryn Matujsiak. In response to questions, she stated that she knew Mitch Moe, the Highway Patrolman who arrested defendant. She admitted that if he was called as a witness, her relationship with him might interfere with her impartiality. However, when advised that his testimony would not be controversial, she stated that her familiarity with him would probably not affect her ability to be fair.

Later during the examination of the jury, the same juror stated that she had been a juror in another homicide trial a couple of months earlier, and that based on that experience, it would be hard for her to presume defendant was innocent. She also stated that she remembered reading about the case in the paper, that based

6

on what she had read, she had formed a previous opinion about the case, and that that opinion might also affect her ability to be fair and impartial. In summary, Ms. Matujsiak was asked the following question by defense counsel, and gave the following answer:

> Q. The fact that you know Officer Moe, you may be more ready to believe his testimony. The fact you have been through another homicide, it is hard to give the defendant the presumption of innocence, and based upon the fact that you may have formed an opinion based on what you have read in the news, do you think you could give **my** client, Mr. Williams, a fair trial?
>
> JUROR : I don't think so.
>
> MR. BEVELDON: You couldn't set that aside?
>
> JUROR : It's a lot to set aside.

Based on those questions and answers, defendant asked to remove Ms. Matujsiak from the jury panel for cause. The attorney for the State had no objection to doing so. The District Court, however, then made the following effort to rehabilitate this juror:

> THE COURT: Well, Ms. Matujsiak throughout the trial, if you are chosen to sit on the case, I would be instructing you that it is your duty not to converse among yourselves or to talk to anyone, or permit anyone else to discuss it with you, the subject of the trial, nor form or express an opinion about the case until it was finally submitted to you. You're not telling the court that you would disregard that instruction if I gave it to you, would you?
>
> JUROR: No.
>
> THE COURT: In fact, the law requires me to give you that instruction every time we recess.
>
> JUROR: I remember that.
>
> THE COURT: And you kept an open mind that **time?**

7

JUROR : Yes.

THE COURT: Even though it was difficult?

JUROR: Right.

THE COURT: That is what you would you do this time, would you not?

JUROR: Uh-huh.

THE COURT: All right, the motion is denied.

The law, with regard to challenging jurors for cause, is set forth at § 46-16-115, MCA, where it provides in relevant part:

(1) Each party may challenge jurors for cause, and each challenge must be tried by the court.

(2) A challenge for cause may be taken for all or any of the following reasons or for any other reason that the court determines:

. . . .

(e) having served on a trial jury that tried another person for the offense charged or a related offense:

. . . .

(j) having a state of mind in reference to the case or either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party.

When a juror has been challenged for cause and that challenge is denied, our standard for review of the district court's denial is whether the district court abused its discretion. We have previously set forth the following rule, which is applicable in this case:

It is a difficult matter at best to ascertain the real state of mind of a prospective juror with respect to detecting the existence of bias or prejudice against one accused of crime. For that reason this court has said

8

> (*State v. Russell*, 73 Mont. 240, 249, 235 Pac. 712, 715) that the determination of the qualification of a juror to serve in a case before the court "must be left largely to the sound discretion of the trial court." Again, in *State v. Huffman*, 89 Mont. 194, 296 Pac. 789, 790, this court said: ". . . the trial court is the judge of the weight to be given to the testimony adduced on a voir dire examination." True, there are cases holding that when a witness has once admitted bias, his subsequent statements that he can consider the evidence impartially should be viewed with caution. But granting the need for careful scrutiny of the testimony of a witness who has first said "no" and then said "yes," it still remains the province of the trial court to decide where the truth lies and with that determination the appellate court will not interfere unless a clear abuse of discretion is shown. *State v. Russell, supra*.

*State v. Allison* (1948), 122 Mont. 120, 129-30, 199 P.2d 279, 285-86.

In this case, the challenged juror candidly and repeatedly expressed her concern about her ability to be impartial in this case. She had not one, but several reasons. She was a close friend of the arresting officer. The incident had occurred in her neighborhood. She read about it and had formed an opinion. Finally, she had served as a juror in a recent homicide trial, which by itself was sufficient statutory ground for her disqualification.

In the face of these admissions of bias, the District Court's rehabilitation of this witness was, at best, unpersuasive, and at worst, threatening. She was told that she would be instructed not to form an opinion, and then asked if she would disregard the instructions of the court. Few people would show the kind of contempt for a judicial officer that would have been necessary to persist in her admissions of bias under those circumstances.

The court's efforts to rehabilitate this witness were especially unnecessary in light of the fact that the State had no objection to her disqualification and that another could have easily been called to take her place. We conclude that the District Court abused its discretion by denying the defendant's challenge to Kathryn Matujsiak for cause. She should have been excused based on both subsections (e) and (j) of § 46-16-115(2), MCA.

However, finding that the District Court abused its discretion is not the end of our inquiry. Criminal convictions will not be reversed on appeal because of error committed by the trial court unless the error was prejudicial. Section 46-20-701, MCA.

In this case, because defendant's challenge for cause was denied, the objectionable juror was removed from the jury by use of defendant's first peremptory challenge. Furthermore, defendant exhausted all six of his peremptory challenges.

Section 46-16-116, MCA, provides that in non-capital cases, both the defendant and the State are entitled to six peremptory challenges. However, those challenges are in addition to the challenges for cause that are provided for in § 46-16-115, MCA. When jurors who should have been removed for cause are not removed and must, therefore, be removed by peremptory challenge, the party whose challenge for cause was wrongfully denied effectively loses one of the peremptory challenges provided for by law. In other words, the effect of the District Court's abuse of discretion in

this case was to reduce defendant's number of peremptory challenges to five, rather than six.

A number of jurisdictions have held that where a district court abuses its discretion by denying a challenge to a juror, the error is prejudicial. For example, in *Jenkins v. Parrish* (Utah 1981), 627 P.2d 533, 536-37, the Utah Supreme Court held that:

> Mrs. Eddins' admissions of expressed bias in the instant case should have resulted in a successful challenge for cause pursuant to Rule 47(f)(6). Forcing plaintiff to use one of his peremptory challenges to remove the juror resulted in prejudicial error. See *Crawford v. Manning* [(Utah 1975), 542 P.2d 1091]. As stated in *Wasco v. Frankel*, 116 Ariz. 288, at 290, 569 P.2d 230, at 232 (1977):
>
> > Peremptory challenges form an effective method of assuring the fairness of a jury trial. Hence, forcing a party to use his peremptory challenges to strike jurors who should have been stricken for cause denies the litigant a substantial right.

*See also, Patterson v. State* (Wyo. 1984), 691 P.2d 253; *People v. Prator* (Colo. App. 1992), 833 P.2d 819.

However, we decline to adopt the rule that an abuse of discretion in denial of a challenge to a juror is conclusively prejudicial and requires automatic reversal. Instead, to be consistent with our previous decisions, we hold that when a district court abuses its discretion by denying a challenge for cause to a prospective juror; where the party who objected to the juror is then required to use one of his or her peremptory challenges to remove the juror; and where that party uses all of his or her peremptory challenges; there is a presumption that the district court's error was prejudicial. That presumption must,

11

however, be balanced against the totality of the circumstances in each case to determine whether the error contributed to the defendant's conviction. We arrive at this conclusion based on our previous decision in *Brodniak v. State* (1989), 239 Mont. 110, 779 P.2d 71. In that case, when considering whether inadmissible evidence was prejudicial, we stated that:

> In Montana, an error of state law will be deemed harmless "unless the record shows that the error was prejudicial." Section 46-20-701, MCA. "The test of prejudicial error requiring reversal is whether there is a reasonable possibility the inadmissible evidence might have contributed to the verdict." *State% Gray* (1983), 207 Mont. 261, 268, 673 P.2d 1262, 1266; *State v. Gray* (1983), 202 Mont. 445, 449-450, 659 P.2d 255, 257; *State v. LaVe* (1977), 174 Mont. 401, 407, 571 P.2d 97, 101.

*Brodniak,* 779 P.2d at 73-74.

We will apply the same standard when reviewing errors committed during jury selection.

We stated in *Brodniak,* 779 P.2d at 74, that "[t]he essential question is whether there is a reasonable possibility that the admissible evidence might have contributed to the conviction."

In making that determination, we applied what was referred to as the "overwhelming evidence rule." We held that:

> The overwhelming evidence rule is one method used by this Court to ascertain whether there is a reasonable possibility that the inadmissible evidence contributed to the verdict. *State v. McKenzie* (1980), 186 Mont. 481, 533, 608 P.2d 428, 458, *cert. denied,* 449 U.S. 1050, 101 S. Ct. 626, 66 L. Ed. 2d 507 (1980); accord, *Tevlin v. People* (Colo. 1986), 715 P.2d 338, 342. Also, when assessing the prejudicial effect of an error, this Court will examine the totality of the circumstances in which the error occurred. *See Gray,* 207 Mont. at 268, 673 P.2d at 1266. If the error involves erroneously admitted evidence, we

12

> will not single out that one item of evidence to evaluate it in isolation. To do so could magnify the prejudicial effect of the error beyond its actual impact on the verdict, leading to reversals for mere technical violations of evidentiary rules.

*Brodniak,* 779 P. 2d at 74.

Likewise, in this case, while we conclude that the District Court abused its discretion by denying defendant's challenge of the juror for cause, and while we start with the presumption that its abuse of discretion was prejudicial, we cannot consider that error in isolation, but must put it in the context of the entire trial.

In this case, the evidence which led to defendant's conviction was basically uncontradicted. It was established that he had an argument with the victim over the profits from drug transactions. He went to the victim's home, where he announced on his arrival that if he did not receive his money someone was going to get killed. The argument was continued and escalated. The victim threatened to call the police. In response, defendant went to his vehicle and obtained a gun. He returned to the home, broke in, and shot the victim.

All of the above occurred in the presence of at least nine witnesses who testified at trial and whose testimony was consistent in all important respects. No witnesses were called by defendant, and none of this evidence was rebutted. None of the State's evidence was admitted over objection by the defendant and there was no objection to any jury instruction offered by the State. In short, the prosecutor in this case tried a textbook case, free from prejudicial or irrelevant considerations, and the result should not

be casually set aside based on error by the District Court in which the prosecution played no part.

After a careful review of the record, it is difficult to conclude that any different result could have occurred if defendant had had six peremptory challenges to the jury, rather than five. We hold that there is no reasonable possibility that the District Court's denial of defendant's challenge for cause to Kathryn Matujsiak contributed to defendant's conviction for deliberate homicide.

For future guidance, we wish to emphasize that the purpose of § 46-16-116, MCA, is to assure that both the State and the defendant have the same number of peremptory challenges to a jury panel which has already passed scrutiny for cause under § 46-16-115, MCA. When that **equal** opportunity has been denied, we will not require a defendant to prove the impossible. Prejudice will be presumed. Therefore, when voir dire examination discloses a serious question about a juror's ability to be fair and impartial, that question should be resolved in favor of excusing that juror. The role of the District Court is not to simply establish some record from which a future argument can be made that the juror recanted his or her admission of bias.

While there may be some temporary inconvenience to the court and to the parties from excusing a juror for cause, that inconvenience is minor compared to the expense and inconvenience that results from having to retry criminal cases.

Even though the District Court's error did not result in reversal of this case, we emphasize that the facts in this case are unique and the results in this case should not lead to the conclusion that similar irregularities during jury selection will not lead to reversal of successful prosecutions in the future.

II.

Did the District Court err when it refused to instruct the jury on the lesser included offense of mitigated deliberate homicide?

Section 45-5-103, MCA, provides:

(1) A person commits the offense of mitigated deliberate homicide when he purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a reasonable person in the actor's situation.

(2) It is an affirmative defense that the defendant acted under the influence of extreme mental or emotional stress for which there was reasonable explanation or excuse, the reasonableness of which shall be determined from the viewpoint of a reasonable person in the actor's situation. This defense constitutes a mitigating circumstance reducing deliberate homicide to mitigated deliberate homicide and must be proved by the defendant by a preponderance of the evidence.

(3) Mitigated deliberate homicide is not an included offense of deliberate homicide as defined in 45-5-102(1)(b).

In *State v. Heit* (1990), 242 Mont. 488, 791 P.2d 1379, we held that:

Generally, "a defendant is entitled to instructions on lessor [sic] included offenses if any evidence exists in the record which would permit the jury to rationally find him guilty of a lessor [sic] offense and acquit him of a

15

greater." *State v. Thornton* (1985), 218 Mont. 317, 320, 708 P.2d 273, 276[] (quoting *State v. Ostwald* (1979), 180 Mont. 530, 538, 591 P.2d 646, 651). Under this rule, in order to find Heit guilty of a lesser offense, Heit had to present **some** evidence supporting the elements of mitigated deliberate homicide as set forth in § 45-5-103, MCA. Thus, Heit was required to offer some evidence demonstrating that he acted under "extreme mental or emotional stress for which there is a reasonable explanation or excuse." *Thornton*, 708 P.2d at 276, § 45-5-103, MCA. The defendant contends that the evidence received at trial demonstrated that there was a struggle over the gun, and that Mr. Heit was agitated and completely intoxicated, and that this evidence was sufficient to warrant instructing the jury on the lesser included offense.

This contention lacks merit. While this evidence indicates that Mr. Heit may have been upset at the time the crime was committed, it does not support a finding of "extreme mental or emotional stress for which there is reasonable explanation or excuse." Section 45-5-103(1), MCA. Nor were there any allegations made that there was a reasonable explanation or excuse for Heit's alleged stress otherthantestimony indicating that the bartender may have said something that made Heit angry. . . . Having presented no credible evidence of mitigation and furthermore having espoused the theory in closing argument that he did not kill the deceased, Heit was not entitled to an instruction on mitigated deliberate homicide as a lesser included offense. [Citations omitted].

*Heit*, 791 P.2d at 1382.

In this case, defendant offered an instruction on the lesser included offense of mitigated deliberate homicide. The State had no objection to such an instruction, and in fact, offered one of its own for the stated purpose of protecting the record. However, the District Court concluded that there was no evidence of mitigation, and therefore, that such an instruction was inappropriate. After thoroughly reviewing the record, we agree.

16

All of the testimony regarding defendant's demeanor when he arrived at Reitler's home came from the State's witnesses. He was variously described as "kind of upset," "mad," "kind of drunk," and "angry." However, as we have previously held in *Heit*, simply being angry or intoxicated would not support a finding of "extreme mental or emotional stress for which there is a reasonable explanation or excuse." Nor was there any reasonable explanation given for defendant's anger which led to his altercation with Reitler. The uncontroverted evidence was that it was based on a disagreement over drug profits, and Reitler's request that defendant leave his home.

We conclude, as a matter of law, that there was insufficient evidence in the record of this case to permit a jury to rationally find defendant guilty of the lesser included offense of mitigated deliberate homicide, and that the District Court did not err by refusing to give defendant's proposed instruction on that offense.

For the reasons set forth above, we affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

17

_John Conway Harrison_

_William E. Hunter_

_Karla M. Gray_

_[signature]_

_[signature]_

Justices

December 22, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

William F. Hooks
Attorney at Law
Appellate Defender Office
P. 0. Box 200145, Capitol Station
Helena, MT 59620-0145

Hon. Joseph P. Mazurek, Attorney General
Patricia J. Jordan, Assistant
215 N. Sanders, Justice Bldg.
Helena, MT 59620

Dennis Paxinos, County Attorney
Daniel L. Schwarz, Deputy
P.O. Box 35025
Billings, MT 59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy