No. 98-693

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 340N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ERNEST LOREE PRESTON,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Powder River,

The Honorable Gary L. Day, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. B. Wheatcroft, Attorney at Law, Miles City, Montana

For Respondent:

Hon. Joseph P. Mazurek, Montana Attorney General, Cregg W. Coughlin, Assistant Montana Attorney General, Helena, Montana; Jeffrey A. Noble, Powder River County Attorney, Broadus, Montana

Submitted on Briefs: September 30, 1999

Decided: December 29, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶ Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶ Ernest Loree Preston (Preston) appeals his jury conviction in the District Court for the Sixteenth Judicial District, Powder River County, of criminal sale of imitation dangerous drugs and theft. We affirm.

¶ Preston raises four issues on appeal. We restate them as follows:

  I. ¶ 1. Whether the District Court erred in denying Preston's motion to dismiss based on "outrageous government conduct."

  I. ¶ 2. Whether the District Court erred in denying Preston's motion to dismiss based on entrapment as a matter of law.

  I. ¶ 3. Whether the District Court erred in denying Preston's motion to dismiss based on a denial by law enforcement officers of his right to counsel.

  I. ¶ 4. Whether Preston established that his right to a fair trial was prejudiced by the District Court's denial of his motion for a change of venue and his challenge to a juror for cause.

## Factual and Procedural Background

¶ On October 12, 1995, Preston was charged by Information with criminal sale of imitation dangerous drugs, a felony, in violation of § 45-9-112, MCA; criminal sale of dangerous drugs, a felony, in violation of § 45-9-101, MCA; and theft, a misdemeanor, in violation of § 45-6-301, MCA.

¶ The charges against Preston stem from his dealings with an undercover informant, Morgan Christopher. In the summer of 1995, Christopher agreed to act as a confidential informant for the Eastern Montana Drug Task Force (the Task Force). Prior to enrolling as an informant for the Task Force, Christopher related to law enforcement officers that Preston had offered several times in the past to supply Christopher with marijuana. Hence, on August 16, 1995, Tom Frank and Lissa Power, law enforcement officers assigned to the Task Force, attached a transmitter and a tape-recording device to Christopher and provided him with $100 cash. Christopher then met with Preston to purchase marijuana.

¶ During their meeting, Preston took $60 from Christopher and told him that he would pick up the drugs in Miles City and deliver them to Christopher later. Christopher subsequently testified that when Preston appeared at Christopher's home later that day, he gave Christopher a folded paper containing a white powder. Preston told Christopher that this powder was "better than marijuana" and that he required payment of an additional $15. Christopher paid him the additional amount.

No

¶ After Preston left, Christopher delivered the paper containing the white powder to the law enforcement officers monitoring the transaction. When the powder was examined by the State Crime Lab, it was determined to be caffeine and not a statutorily-defined dangerous drug.

¶ On August 22, 1995, Christopher again went to Preston in an attempt to purchase marijuana. Preston took $60 from Christopher and told Christopher to meet him at the city park at 10 o'clock that evening. Christopher waited in the park at the appointed time, but Preston failed to appear.

¶ Preston was arrested on October 5, 1995. In an interview with law enforcement officers after his arrest and after he was informed of and waived his *Miranda* rights, Preston admitted that he knew the powder he had given to Christopher contained imitation dangerous drugs because he personally ground up Max Alert tablets, an over the counter drug, and gave them to Christopher. Preston also admitted that he kept Christopher's money the second time without providing drugs because he suspected that Christopher was acting as an informant.

¶ After this disclosure, Preston asked to speak to one of the officers from the Task Force. Preston had worked as an undercover informant for the Task Force after his conviction for selling dangerous drugs in 1990. When Officer Frank spoke with him, Preston related that he was considering working again for the Task Force, but that he wanted some of the charges against him dismissed. Officer Frank contacted the county attorney who rejected all of Preston's demands. The county attorney did agree, however, to not seek a persistent felony offender designation for Preston if he would assist the Task Force. Preston agreed and subsequently assisted in making undercover drug buys in Miles City and Baker, Montana.

¶ On September 17, 1996, Preston's counsel filed a motion with the District Court to dismiss the charges against Preston on the grounds of entrapment, violation of his right to counsel, and outrageous government conduct. A hearing on this motion began on November 4, 1996, but was continued to June 9, 1997. Additional testimony was taken at that time, however, the hearing was once again continued to February 4, 1998, before the Honorable Gary L. Day, who subsequently denied the motion to dismiss.

¶ On June 4, 1998, Preston's counsel filed a motion for change of venue arguing that unfavorable pretrial publicity would render it impossible to empanel an impartial jury. In a

hearing conducted June 10, 1998, defense counsel argued that an article in the Powder River Examiner referred to the amount that a particular individual was costing the county. While no names were mentioned in the article, defense counsel asserted that the article referred to Preston. The District Court declined to change venue based on that newspaper article but agreed to revisit the issue at trial when selecting the jury.

¶ Preston's trial commenced on June 25, 1998. After voir dire and before exercising peremptory challenges, defense counsel renewed the motion for change of venue on the basis of unfavorable pretrial publicity. The District Court denied the motion concluding that some knowledge of a case is not sufficient to justify a claim of prejudice.

¶ The jury found Preston guilty of theft and criminal sale of imitation dangerous drugs. The court sentenced him to five years, with two years suspended, in the Montana State Prison on the drug conviction and to six months in the Powder River County Jail on the theft conviction. The court ordered that the sentences run concurrently. Preston now appeals the denial of his motions to dismiss and for change of venue as well as the judgment.

## Standard of Review

¶ We have held that the grant or denial of a pretrial motion to dismiss in a criminal case presents a question of law for review on appeal. *State v. Morgan*, 1998 MT 268, ¶ 17, 291 Mont. 347, ¶ 17, 968 P.2d 1120, ¶ 17. The standard of review of a district court's conclusions of law is plenary and this Court reviews the conclusions to determine if they are correct. *Morgan*, ¶ 17 (citing *State v. Hansen* (1995), 273 Mont. 321, 323, 903 P.2d 194, 195; *State v. Sage* (1992), 255 Mont. 227, 229, 841 P.2d 1142, 1143).

## Issue 1.

I. ¶ *Whether the District Court erred in denying Preston's motion to dismiss based on "outrageous government conduct."*

¶ Preston contends that he was the victim of outrageous government conduct that deprived him of his right to due process. He asserts that "[m]uch of the conduct" on the part of Officer Frank "could properly be termed as outrageous."

¶ The Due Process Clause of the Fifth Amendment may bar a conviction where the State's

involvement in a criminal enterprise is "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Smith* (9th Cir. 1991), 924 F.2d 889, 897 (citation omitted). The United States Supreme Court first enunciated the defense of outrageous government conduct in *United States v. Russell* (1973), 411 U.S. 423, 93 S. Ct. 1637, 36 L.Ed.2d 366. In *Russell*, an undercover narcotics agent investigating the defendant and his confederates, supplied the defendant with one of the ingredients necessary to manufacture methamphetamine. Although this ingredient was a legal substance, it was difficult to obtain. Based on evidence obtained by the narcotics agent, the defendant was eventually convicted of three counts of unlawfully manufacturing and selling methamphetamine. On appeal, the United States Court of Appeals for the Ninth Circuit reversed the conviction concluding that as a matter of law "a defense to a criminal charge may be founded upon an intolerable degree of governmental participation in the criminal enterprise." *United States v. Russell* (9th Cir. 1972), 459 F.2d 671, 673. However, the United States Supreme Court reversed the Court of Appeals stating:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . . the instant case is distinctly not of that breed.

*Russell*, 411 U.S. at 431-32, 93 S.Ct. at 1643.

¶ Since the Supreme Court's determination in *Russell*, both state and federal decisions have limited the outrageous government conduct defense to extreme cases in which the government has essentially manufactured the crime or has generated new crimes merely for the sake of pressing criminal charges against the defendant. *State v. Williams-Rusch* (1996), 279 Mont. 437, 445, 928 P.2d 169, 174 (citing *State v. DeAngelo* (Or. 1992), 830 P.2d 630, 632-33; *United States v. Stenberg* (9th Cir. 1986), 803 F.2d 422, 429; *United States v. Bogart* (9th Cir. 1986), 783 F.2d 1428, 1436, *vacated on other grounds sub nom. United States v. Wingender* (9th Cir. 1986), 790 F.2d 802).

¶ Thus, the doctrine of outrageous government conduct is a "most narrow" defense. *State v. Briner* (1992), 253 Mont. 158, 164, 831 P.2d 1365, 1369 (quoting *United States v. Ryan* (9th Cir. 1976), 548 F.2d 782, 789, *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308). In *State v. Haskins* (1992), 255 Mont. 202, 841 P.2d 542, this Court upheld the District Court's denial of a defendant's motion to dismiss for outrageous government conduct because the defendant failed to show how the alleged police misconduct violated

the defendant's constitutional rights relating to the crimes charged.

¶ Similarly, in the instant case, Preston has failed to show how the alleged police misconduct violated his constitutional rights relating to the crimes for which he was charged.

Preston contends that Officer Frank came to his cell and threatened him with prison if he failed to cooperate in becoming an informant. However, a review of the record shows that the idea of Preston becoming an informant originated with Preston. By offering to work as an informant for the Task Force, Preston hoped to get out of jail and to avoid a prison term. However, the county attorney would not agree to those terms. Instead, she agreed not to pursue a persistent felony offender designation. Preston voluntarily cooperated with law enforcement and received his bargained-for benefit of avoiding an additional sentence as a persistent felony offender.

¶ Preston also makes a vague claim that "the conduct of the law enforcement community in attempting to run Preston out of town was deplorable." However, Preston fails to substantiate that claim with any facts.

¶ Accordingly, we hold that the District Court did not err in denying Preston's motion to dismiss based on "outrageous government conduct."

## Issue 2.

¶ *Whether the District Court erred in denying Preston's motion to dismiss based on entrapment as a matter of law.*

¶ In reviewing a district court's denial of a motion to dismiss based on entrapment, this Court reviews the evidence and inferences therefrom in a light most favorable to the State. *State v. Brandon* (1994), 264 Mont. 231, 242, 870 P.2d 734, 741 (citing *State v. Kim* (1989), 239 Mont. 189, 194, 779 P.2d 512, 515).

¶ Entrapment is an affirmative defense available to a criminal defendant and is codified at § 45-2-213, MCA, as follows:

> **Entrapment.** A person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a

public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated.

The burden of proving entrapment rests with the defendant. *Brandon*, 264 Mont. at 243, 870 P.2d at 741. *See also Kim*, 239 Mont. at 194, 779 P.2d at 515; *State v. Kamrud* (1980), 188 Mont. 100, 105, 611 P.2d 188, 191. However, a court may determine that entrapment exists as a matter of law. *Kim*, 239 Mont. at 194, 779 P.2d at 515 (citation omitted). If there are conflicting facts, the issue is properly submitted to a jury. *Kim*, 239 Mont. at 194, 779 P.2d at 515 (citation omitted).

¶ In *State v. Farnsworth* (1989), 240 Mont. 328, 331, 783 P.2d 1365, 1367, we set forth three elements that must be shown for an entrapment defense:

> 1. Criminal intent or design originating in the mind of the police officer or informer;
>
> 2. Absence of criminal intent or design originating in the mind of the accused; and
>
> 3. Luring or inducing the accused into committing a crime the accused had no intention of committing.

As we noted in *Brandon*, "there is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception." *Brandon*, 264 Mont. at 243, 870 P.2d at 741 (quoting *State v. Karathanos* (1972), 158 Mont. 461, 470, 493 P.2d 326, 331). "Merely affording the defendant the opportunity or facility for committing an offense is not entrapment." *State v. Sweet* (1998), 287 Mont. 336, 342, 954 P.2d 1133, 1137.

¶ Having reviewed the evidence and the elements of this defense, we conclude that entrapment did not exist as a matter of law in this case. At the hearing on Preston's motion to dismiss, Christopher testified that prior to his agreeing to act as a confidential informant for the Task Force, Preston offered to sell him drugs and had purchased alcohol for a minor. Additionally, the evidence showed that Preston had been convicted of drug-related offenses in the past for both using and selling drugs. Preston did not produce any testimony or evidence to show that the criminal intent or design originated in the mind of

the law enforcement officers and not in his own mind. Nor did he present any testimony or evidence to show that he was lured or induced into committing a crime which he had no intention of committing.

¶ Accordingly, we hold that the District Court did not err in denying Preston's motion to dismiss based on entrapment as a matter of law.

## Issue 3.

I. ¶ *Whether the District Court erred in denying Preston's motion to dismiss based on a denial by law enforcement officers of his right to counsel.*

¶ Preston contends that he was denied the right to counsel because he was told by various members of the Task Force not to let his attorney know he was acting as an informant. He also contends that statements he made to law enforcement officers regarding his knowledge of the drug scene, while acting as an informant and without the benefit of counsel, greatly prejudiced his case.

¶ Preston was arrested at his home on October 5, 1995. The record in this case clearly establishes that contemporaneously with his arrest, Preston was fully advised of his rights, including the right to remain silent and the right to counsel. Preston waived those rights when he asked to speak to Task Force officers to discuss his desire to act as a confidential informant so that he could obtain preferential treatment. It was not until his arraignment, after he had already agreed to work as a confidential informant, that Preston requested counsel be appointed for him.

¶ Contrary to Preston's contention, Officers Power and Frank did not specifically advise Preston not to tell his attorney that he was acting as a confidential informant for the Task Force. As Officer Power testified at the November 4, 1996 hearing on Preston's motion to dismiss: "As a matter of routine, we advise [confidential informants] that it may be in their best interest to tell no one that they are working for us." The very nature of undercover work requires that the fact the individual is working undercover remain confidential.

¶ Moreover, Preston has failed to establish that he suffered any prejudice to his defense by the failure to advise his counsel that he was acting as a confidential informant. Nor has Preston established any prejudice to his defense from the fact that during the time he was acting as a confidential informant, he made statements to law enforcement officers

regarding his knowledge of the drug trade.

¶ When he approached Officer Frank about becoming a confidential informant, Preston asserted that he had knowledge of the drug scene. It was that knowledge that he traded upon to receive preferential treatment. The fact that he voluntarily supplied law enforcement officers with information about possible illegal actions of other individuals involved in the drug trade did not prejudice his defense. On the contrary, he willingly traded upon that knowledge for his own benefit by making an agreement with the State to not seek a persistent felony offender designation in his case.

¶ Preston also contends that "[t]he element of prejudice to the appellant arising out of the State's violation of his right to counsel is evident in the failure of the State to honor its 'deal' with Preston." The only "deal" the State made with Preston was to not seek a persistent felony offender designation. Contrary to Preston's assertion, that "deal" was indeed honored by the State.

¶ Accordingly, we hold that the District Court did not err in denying Preston's motion to dismiss based on a denial by law enforcement officers of his right to counsel.

## Issue 4.

I. *¶ Whether Preston established that his right to a fair trial was prejudiced by the District Court's denial of his motion for a change of venue and his challenge to a juror for cause.*

¶ Preston contends in his brief on appeal that the District Court erred in denying his motion for change of venue based upon pretrial publicity. However, Preston fails to brief his claim in that regard. Therefore, that issue is deemed waived under Rule 23(a)(4), M.R. App.P., and we will not address it. *See State v. Carter* (1997), 285 Mont. 449, 461, 948 P.2d 1173, 1180; *Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27; *State v. Steffes* (1994), 269 Mont. 214, 233, 887 P.2d 1196, 1208.

¶ Preston also contends that the District Court erred and that his right to a fair trial was prejudiced by the court's denial of his challenge for cause to a prospective juror. Specifically, Preston contends that prospective juror Deborah Blankenship should have been removed from the jury because she expressed the opinion that she would have trouble sitting on a case involving drugs.

¶ This Court will not reverse a district court's decision regarding a juror's fitness to serve absent an abuse of discretion. *State v. DeVore*, 1998 MT 340, ¶ 12, 292 Mont. 325, ¶ 12, 972 P.2d 816, ¶ 12 (citing *State v. Sullivan* (1994), 266 Mont. 313, 320, 880 P.2d 829, 834; *State v. Williams* (1993), 262 Mont. 530, 536, 866 P.2d 1099, 1102). Because the trial court is best able to observe the jurors and to decide the potential for prejudice when allegations of juror misconduct are raised, the trial court has significant latitude when ruling on such matters. *State v. Gollehon* (1993), 262 Mont. 293, 303, 864 P.2d 1257, 1263-64 (citing *State v. Eagan* (1978), 178 Mont. 67, 76, 582 P.2d 1195, 1200). This Court gives the trial court's determination considerable weight and will defer to that determination absent a showing of prejudice. *Gollehon*, 262 Mont. at 303, 864 P.2d at 1264.

¶ In *Williams*, this Court held that it will presume prejudice if: (1) a district court abuses its discretion by denying a challenge for cause to a prospective juror; (2) the defendant uses one of his peremptory challenges to remove the disputed juror; and (3) the defendant exhausts all of his peremptory challenges. *Williams*, 262 Mont. at 538, 866 P.2d at 1103. If the presumption of prejudice is established, this Court will balance the presumption "against the totality of the circumstances in each case to determine whether the error contributed to the defendant's conviction." *DeVore*, ¶ 33 (citations omitted).

¶ In the case *sub judice*, Preston did not use one of his peremptory challenges to remove Blankenship from the jury, thus, there is no presumption of prejudice. *See Williams*, 262 Mont. at 538, 866 P.2d at 1103. Nor has Preston established that he was in fact prejudiced by the District Court's denial of the challenge for cause of Blankenship.

¶ Furthermore, the jury was not charged with the determination of a factual issue important to the charges against Preston. *See DeVore*, ¶ 41. Preston offered no evidence in his case in chief, in fact, he rested immediately after presentation of the State's case.

¶ Accordingly, we hold that Preston has not established that his right to a fair trial was prejudiced by the District Court's denial of his challenge to a juror for cause.

¶ Affirmed.

/S/ JAMES C. NELSON

No

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY