STATE EX REL. MIDDLETON, RELATOR, *v.* DISTRICT
COURT ET AL., RESPONDENTS.

(No. 6,516.)

(Submitted May 20, 1929. Decided June 8, 1929.)

[278 Pac. 122.]

*Mr. S. P. Wilson,* for Relator, submitted a brief and argued the cause orally.

*Mr. W. E. Casleton,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The relator, Austin B. Middleton, filed in this court petition and affidavit for a writ of supervisory control to review the order of the district court of Powell county and Hon. George B. Winston, judge thereof, adjudging him guilty of contempt of court, and thereon this court issued its alternative writ directing the respondents to show cause on May 20, 1929, why the judgment should not be annulled.

In response to the order, the respondents appeared by W. E. Casleton, Esq., the relator in the contempt proceedings, and moved to quash the proceeding on the ground that the affidavit and petition do not state facts sufficient to entitle this relator to the relief sought, and that the facts alleged are not such as should be considered in an action of this nature. The matter was then argued and submitted on the merits. The record contains a bill of exceptions setting out all the evidence adduced on the hearing in the contempt matter.

1. *On the motion to quash.* The provision of the Constitution that the supreme court "shall have general supervisory control over all inferior courts" grants to this court jurisdiction to issue a "supervisory writ" (*State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395; *State ex rel. Anaconda Copper Min. Co.* v. *District Court,* 25 Mont. 504, 65 Pac. 1020), to prevent a failure of justice by supplying a means for the correction of manifest error committed by a trial court while acting within jurisdiction, where there is no other adequate remedy and gross injustice is threatened, as where a court has "acted so arbitrarily, unlawfully and with such disregard of" the rights of a litigant as to be tyrannical.

(*In re Weston,* 28 Mont. 207, 72 Pac. 512; *State ex rel. United States F. & G. Co.* v. *District Court,* 77 Mont. 214, 250 Pac. 609; *State ex rel. Hubbert* v. *District Court,* 54 Mont. 472, 171 Pac. 784.)

In the contempt proceeding, the court was acting within ▮ jurisdiction on an affidavit alleging a contempt committed without the presence of the court, by disobedience of a lawful order and judgment of the court (secs. 9908, subd. 12, and 9910, Rev. Codes 1921), but the power to punish for contempt is not arbitrary; it must be exercised only when the necessity arises, and then with intelligent discretion to serve its purpose and under the rules of procedure established; the record on which the judgment is based must show the proof of substantial facts warranting the judgment of contempt (*State ex rel. Zosel* v. *District Court,* 56 Mont. 578, 185 Pac. 1112; *State ex rel. Rankin* v. *District Court,* 58 Mont. 276, 191 Pac. 772).

To bring a case within the supervisory power of this court ▮▮ it is not necessary to show actual ill will or malice on the part of the court toward the litigant in order to establish the order made as "tyrannical," as, if the order or judgment is warranted by no substantial evidence found in the record, the conclusion that the action was "tyrannical," and that, therefore, this court should exercise its power to correct the manifest injustice, follows, and this court will review the evidence for the purpose of determining the question, if it appears that the relator has no other adequate remedy. This was done in the *Rankin Case* above, wherein the relator had been adjudged in contempt of court on a record which did not show sufficient facts to warrant the judgment. The relator has no other remedy, as an appeal does not lie from a judgment of contempt (*State ex rel. Zosel* v. *District Court,* above), and the writ of review, or certiorari, may be granted only when the trial court has exceeded its jurisdiction (sec. 9837, Rev. Codes 1921; *State ex rel. King* v. *District Court,* 24 Mont. 494, 62 Pac. 820).

Herein the affidavit and petition show the validity of the judgment which it is alleged in the contempt proceeding this relator refused to obey, and the regularity of the proceeding leading up to the pronouncement of judgment of contempt; it alleges facts sufficient to show that, on the hearing, no substantial evidence was adduced to support the judgment, and that the relator has no plain, adequate or speedy remedy by appeal or otherwise. The affidavit and petition state sufficient facts to warrant the relief sought, and review by writ of supervisory control is the proper method of correcting the error, if error was committed. (*State ex rel. Kuhr* v. *District Court,* 82 Mont. 515, 268 Pac. 501.) The motion to quash is overruled.

2. *On the merits.* The facts disclosed by the record, without substantial contradiction, are as follows: In January, 1928, W. E. Casleton, an attorney at law, brought action to compel Middleton, as warden of the state penitentiary, to permit him to consult in private with two clients who were confined in the institution, but, as he alleged, were charged with grand larceny, on which charge they had not been brought to trial. The district court sustained a demurrer to his complaint, and rendered judgment dismissing the action. On appeal this judgment was reversed, with direction to enter an order directing the warden to comply with Casleton's demands. (*State ex rel. Casleton* v. *Board of State Prison Commrs.,* 84 Mont. 14, 273 Pac. 1044.) Pursuant to this direction, the district court entered its order and judgment directing the warden to permit Casleton, on request, to interview his clients at any reasonable time "in such place and under such circumstances as will afford reasonable opportunity for absolute privacy of consultation."

In March, 1929, Casleton filed in the district court his affidavit charging that the warden had denied his request for an interview with one of his clients "alone and in private," and did "thereby unlawfully, wrongfully and contemptuously disobey the order and judgment of the court." The warden

entered a plea of "not guilty," and a trial was had and judgment of contempt entered. This proceeding followed.

The record discloses that, when Casleton made his request for an interview with his client, he was told by a deputy, acting under orders from the warden, that he would be permitted to see and talk with his client through a small window cut through the wall between the hallway and a small room in the penitentiary level with a man's face; the window was shown him; it is fourteen inches high, thirteen inches wide, and thirteen inches deep, fitted with a one-half inch mesh screen on each side. Casleton was told that his client would be placed in the room, and he would stand in the hall, and that all persons would be withdrawn from ear-shot, but that a guard would stand outside of a glass door some distance away where he could see Casleton, but could hear nothing of what was said. Casleton refused to accept a consultation under the conditions imposed, declaring that such an interview would not be in "absolute privacy," but made no suggestion to the deputy as to what he would consider a private interview, explaining in the contempt proceeding that he deemed it useless to do so. On the stand he stated that he considered a strictly private consultation one such as could be had in his office, where attorney and client could sit in a room with their heads as close together as they saw fit, nothing intervening, and could submit papers and documents the one to the other and study them together, and where the attorney could have his client sign such instruments as he desired. He, however, expressly repudiated any contention that the privacy of consultation would be violated by the fact that a deputy warden could see him while standing at the window, and stated on cross-examination that he did not desire to consult his client with reference to the case pending, as stated in his original application, but desired to discuss the legality of the conviction on which the man was committed to the penitentiary, which was on plea of guilty entered more than a year prior to the hearing in the contempt proceeding. He conceded that he might have been satisfied with the arrangement had the screens been

removed from the window so that he could pass papers through to his client, had he desired to do so, but did not testify that he had any documents to submit to his client; he suggested that his client was somewhat hard of hearing, and he complained that he could not see well through the screens. Casleton stated on cross-examination that he had had trouble with the warden in the past when he had forced the warden to turn over to him certain money belonging to his client, and intimated that at one time he had been "thrown out" of the penitentiary.

The state prison is under the supervision of the state board of prison commissioners, composed of the governor, the secretary of state, and the attorney general, which board promulgates "rules, regulations and by-laws" regulating intercourse between visitors and inmates. (Secs. 12435 and 12453, Rev. Codes 1921.) Under these rules, no prisoner is permitted to employ counsel or pay out money for that purpose without first securing permission from the board; prisoners may be visited only in the presence of a guard; and the officer must allow no article to be passed from the one to the other, except through his hands. The warden is required to enforce these regulations.

It is clear that the arrangement made by the warden constituted an attempt to comply with the judgment of the court and at the same time enforce the regulations of the board in so far as they do not conflict with that judgment; it insured conversation between attorney and client, standing within two feet of one another, which could not be heard by outsiders, although it cannot be said that it insured comfort and ease of consultation; it guarded against the passing of articles, including papers, from the one to the other. Whether or not this arrangement constituted disobedience of the court's order depends upon the interpretation of the phrase "absolute privacy of consultation"; counsel says that it does, and quotes from *Ex parte Snyder*, 62 Cal. App. 697, 217 Pac. 777, where it is said that the constitutional right to private consultation "would be denied them if they [prisoners] are compelled to

hold consultations with their attorneys within the hearing of others, and without any opportunity to receive, exchange, sign, examine, or read legal documents and other writings." We agree with this statement as applied to the facts before the court in the particular case, but the decision, with all others on this subject brought to our attention or which we have been able to find, deals with the preparation for trial by a person charged with a crime, and refers to consultation in jail rather than in a state prison, and it was on the showing made that Casleton's clients were charged with a criminal offense and were awaiting trial thereon that the opinion in *State ex rel. Casleton* v. *Board of State Prison Commrs.*, above, is largely based.

The constitutional provisions from which this right is deduced in the decided cases are all to the same effect as our provision that "in all criminal prosecutions the accused shall have the right to appeal and defend in person and by counsel" (sec. 16, Art. III, Const.), it being held that the letter of the law would be complied with by granting the accused the benefit of counsel merely on the "trial," but that "such a construction would illustrate the truth of that part of the old maxim which declares 'the letter killeth,' and disregards its conclusion, 'while the spirit giveth life.'" (*People ex rel. Burgess* v. *Risley*, 1 N. Y. Cr. Rep. 492.)

As the section above quoted is our only constitutional provision which may be said to deal with the subject of consultation between prisoners and their attorneys, it is clear that the Constitution does not guarantee to a prisoner the right of private consultation on matters not connected with a pending case against him. The constitutional right of an accused will, in the interest of justice, always be scrupulously guarded and protected, but, when the accusation ripens into a judgment of conviction, and that judgment becomes final, the prisoner becomes a ward of the state, incarcerated to expiate his crime; he no longer possesses such constitutional rights, and is subject to all reasonable rules and regulations of the institution in which he is confined, framed for his safekeeping and the protection of society.

However, section 8990, Revised Codes of 1921, on which the ▉ opinion in *Casleton's Case* against the board of state prison commissioners, above, is grounded, is sufficiently broad to require any person having in custody "any person committed" to any "jail or other place of custody" to permit any attorney such a person desires to consult, to hold a consultation with his client "alone and in private."

Even in the case of a constitutional right of consultation, "the officers in charge should take such precautions as may be necessary, according to the circumstances of the case, to prevent the escape of the prisoner" (*State ex rel. Tucker* v. *Davis*, 9 Okl. Cr. 94, 44 L. R. A. (n. s.) 1083, 130 Pac. 962); manifestly, "the circumstances of the case," when a convict desires to consult an attorney on a matter not connected with a pending trial, are vastly different from those of a person held on a criminal charge in a county jail and presumed to be innocent; by reason of the greater necessity, the latitude to be allowed a warden of the state prison in the first class of cases must necessarily be greater than that accorded to a sheriff in the second class of cases, and what we here say must be understood as applying only to statutory rights in the first class of cases and not to constitutional rights in the second class.

The rules of the state board, referred to above, were promulgated for the purpose of guarding against the escape of convicts and the receipt by them of anything which might work to their detriment or that of the institution and its officers; they are salutary, and should be upheld in so far as may be without depriving the convicts of any statutory right. It is suggested that this purpose might be accomplished by a search of the attorney before according him a consultation in direct contact with his client, but, aside from the embarrassment of subjecting a member of an honorable profession to such a search, the warden would be powerless to enforce such a rule, if made, against the will of the attorney. (*Shields* v. *State*, 104 Ala. 35, 53 Am. St. Rep. 17, 16 South. 85.)

The extent of the requirement of the statute and of the ██ judgment of the court is that the attorney be granted "absolute privacy of consultation." "Privacy" means "the state of being in retirement from the company or observation of others; concealment of what is said and done; secrecy," while a consultation is "the deliberation of two or more persons on some subject." (Webster's New International Dictionary.) The arrangement made by the warden meets with these definitions; nor do we see how that arrangement would have hampered the attorney had he desired to submit documents to his client; they could have been read to the convict during the course of the consultation, and, if the latter's signature was required, we see no reason why counsel should object to submitting papers for signing through an officer of the institution; at least there is nothing in the record to show that the inability of counsel to pass papers through to his client worked any hardship upon him in the instant case. The right to "consult" with a prisoner depends upon legitimate business to be transacted, not upon a mere desire to visit the prisoner, and the reasonableness of the arrangement made in each case depends largely upon the nature and extent of the business to be transacted. In preparing for trial, it may become necessary for the attorney and client to make a close study of instruments, documents, or maps, and to extend the consultation over a long period of time; under such circumstances the arrangement offered Casleton might not be reasonable, but, on the showing made in the contempt proceeding, nothing appears to indicate that Casleton was not offered a "private consultation" sufficient under all of the surrounding circumstances. The record, therefore, does not support the judgment of conviction of contempt.

The judgment is annulled, and the respondent court directed to discharge the relator.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.