No. 02-600

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 113

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

LEVI BRANDON RICHESON,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
                  In and for the County of Cascade, Cause No. BDC-01-383,
                  The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Chad Wright, Appellate Defender Office, Helena, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; Tammy K. Plubell,
                Assistant Attorney General, Helena, Montana

                    Submitted on Briefs:  October 30, 2003

                            Decided:  May 3, 2004

Filed:

               _____
                           Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Levi Brandon Richeson (Richeson) was convicted by a jury of four counts of sexual intercourse without consent, § 45-5-503(3)(a), MCA (1999), and of three counts of unlawful transactions with minors, § 45-5-623(1)(b), MCA (1999), in the Eighth Judicial District Court, Cascade County. During jury selection, Richeson's trial counsel moved to disqualify a juror for cause based on the juror's employment as a detention officer. The District Court denied Richeson's motion. Richeson appeals this denial and also argues that he was given ineffective assistance of counsel because his trial counsel failed to advance the statutory criteria of a guardian-and-ward relationship, § 46-16-115(2)(b), MCA (1999), to remove the juror for cause. We affirm the decision of the District Court.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court properly exercise its discretion when it denied Richeson's challenge of a juror for cause based on the juror's employment as a detention officer?

¶4 2. Was Richeson's trial counsel ineffective because he did not rely on the statutory provision defining guardian-ward relationship to challenge potential Juror Arndt for cause?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On September 20, 2001, the State of Montana filed an Information charging Richeson with four counts of sexual intercourse without consent, felonies, in violation of § 45-5-503(3)(a), MCA, and three counts of unlawful transactions with minors, misdemeanors, in violation of § 45-5-623(1)(b), MCA. On February 25 and 26, 2002, the District Court conducted a jury trial, after which the jury found Richeson guilty of all charges.

¶6 The District Court conducted a sentencing hearing on June 19, 2002, and thereafter

2

sentenced Richeson to four ten-year consecutive sentences for the convictions of sexual intercourse without consent and three six-month consecutive sentences for the convictions of unlawful transactions with minors.

¶7 According to trial testimony, over a two-day period, on April 17 and 18, 2001, Richeson, then age twenty-two, supplied beer and marijuana to two minors, then ages thirteen and fourteen, both runaways at the time. Richeson also rented rooms at two hotels over this same two-day period and engaged in sexual intercourse twice on April 17 and twice on April 18 with the thirteen year old girl (K.W.).

¶8 On April 19, K.W. returned to school. The school immediately notified K.W.'s parents of her whereabouts. K.W. eventually confided in her parents that she and Richeson had engaged in sexual intercourse. K.W. thereafter reported this information to Detective Scheele of the Great Falls Police Department, which led to Richeson's arrest.

¶9 During voir dire proceedings the State notified the District Court that potential juror, Jessica Arndt (Arndt), was employed as a guard at the detention center and could potentially know Richeson through her employment. Upon questioning by the State in open court as to whether Arndt knew anybody involved in Richeson's case, Arndt responded, "I know the defendant." The District Court then conducted a sidebar conference and decided that further questioning of Arndt should be in chambers, outside the presence of the entire jury panel.

¶10 In chambers, the following dialogue occurred between Arndt and Richeson's counsel:

Q: Thank you. First of all, for the record, would you state how you know Levi Richeson?

A: I am a detention officer.

Q: With your employment are you aware of his current status?

A: Just that he's on trial now, that he's being held in the jail.

Q: You're aware that he's in custody? Do you know anything about the details of his custody?

A: No, I don't.

Q: Does the fact that he's in custody interfere with your ability as you see it, to be able to sit as a juror in this case?

A: I don't think it would.

Q: You think you would have the ability to proceed even with the knowledge that he is being held in custody?

A: Uh-huh.

Q: If you were sitting in Mr. Richeson's place and you were sitting on the jury knowing what you know about Mr. Richeson, would you want yourself on the jury?

A: No.

¶11 Richeson's counsel then moved the District Court to remove Arndt for cause. Prior to the District Court ruling on the motion, the State questioned Juror Arndt. The following dialogue took place between the State and Arndt:

Q: Have you dealt with him personally?

A: No.

Q: Have you ever talked, spoken with him or talked with him at all?

A: No.

Q: You just know he's in custody?

4

A: Uh-huh.

. . . .

Q: You wouldn't want yourself as a juror. Does that apply to any criminal defendant, not specific to this?

A: No.

Q: There's no reason for you saying that other than just your own?

A: Uh-huh.

Q: You just say that because of your job and duties and everything else?

A: Uh-huh.

Q: Good. If you're picked as a juror, you would have to pay attention to the facts and testimony and be impartial. Can you do that?

A: Yes.

Q: Okay. So when you say you wouldn't want yourself as a juror, that's basically because of your personality trait that basically you're giving us, not something that you cannot separate yourself from; is that correct?

A: Correct.

Q: So is there any reason you could not be a juror today, why you couldn't be fair?

A: No.

Q: Could you take that oath to be honest and weigh the facts fairly?

A. Yes.

¶12    Following this exchange, the State objected to Richeson's counsel's motion to remove Arndt for cause. The District Court then questioned Arndt:

Q: All right. Well, Ms. Arndt the bottom line here is whether or not you'll be

5

able to give both the State and the defendant a fair trial here. [Do you think] that's something you can do . . . ?

A: I can.  I can do it if you ask me to, yes.

Q: If you are selected you'll be given instructions to do that.  Is that something that you can follow?

A: Yes.

¶13   The District Court denied Richeson's motion to remove Juror Arndt for cause. Richeson then requested that the Court instruct Arndt to refrain from any conversation with other jurors about her work capacity or any relationship she may have with Richeson stemming therefrom.  The District Court granted the motion and instructed Arndt accordingly.  The State and Richeson each used their allotted peremptory challenges, Richeson using his last peremptory challenge to strike Arndt from the panel.

**STANDARD OF REVIEW**

¶14   We review denial of a challenge to dismiss a juror for cause for abuse of discretion. *State v. Falls Down*, 2003 MT 300, ¶ 17, 318 Mont. 219, ¶ 17, 79 P.3d 797, ¶ 17 (citation omitted).  Because of the right to a trial by an impartial jury, Art. II, Sec. 24, Mont. Const., and the great expense and inconvenience that results from retrial, dismissal for cause is favored when a serious question arises about a juror's ability to be impartial.  *State v. Freshment*, 2002 MT 61, ¶ 11, 309 Mont. 154, ¶ 11, 43 P.3d 968, ¶ 11 (citations omitted).

¶15   To determine whether to dismiss a juror for cause, trial courts are guided, in part, by § 46-16-115(2)(b) & (j), MCA, which provides:

(2) A challenge for cause may be taken for all or any of the following reasons or for any other reason that the court determines:
. . . .

6

(b) standing in the relation of guardian and ward, attorney and client, master and servant, landlord and tenant, or debtor and creditor with or being a member of the family or in the employment of the defendant or the person who is alleged to be injured by the offense charged or on whose complaint the prosecution was instituted.

. . . .

(j) having a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party.

¶16 Challenges for cause asserted pursuant to § 46-16-115(2)(j), MCA, are to be granted or denied pursuant to both the statutory language and the totality of circumstances presented. *State v. Heath*, 2004 MT 58, ¶ 16, 320 Mont. 211, ¶ 16, ___ P.3d ___, ¶ 16. Abuse of discretion occurs if a court fails to excuse a prospective juror if actual bias is discovered during voir dire. *Freshment*, ¶ 12. If a court has abused its discretion in granting or denying a challenge for cause, we then determine whether a conviction should be set aside as a result of that error. *Falls Down*, ¶ 17.

## DISCUSSION

### ISSUE ONE

¶17 **Did the District Court properly exercise its discretion when it denied Richeson's challenge of a juror for cause based on the juror's employment as a detention officer?**

¶18 Richeson contends that the District Court erred in failing to properly assess the circumstantial evidence, which, Richeson argues, revealed that Arndt was inherently prejudiced against him because she was a detention officer. Richeson thus asserts that the District Court abused its discretion in failing to remove Juror Arndt for cause.

¶19 Richeson first alleges that Arndt would have encountered Richeson in jail clothing

7

rather than civilian clothing, and asserts that Richeson's appearance in such clothing may have a prejudicial effect on Arndt's judgment during the course of the trial. Richeson relies on the United States Supreme Court decision in *Estelle v. Williams* (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, for the proposition that Richeson's appearance in jail clothing at the detention center would be a "constant reminder of the accused's condition implicit in such distinctive, identifiable attire," and thus may affect Arndt's judgment. *See Estelle*, 425 U.S. at 503-04, 96 S.Ct. at 1692-93, 48 L.Ed.2d at 129-30. Richeson contends that the *Estelle* Court found such practice to be unconstitutional.

¶20     In *Estelle*, the defendant, unable to post bond, asked an officer at the jail for his civilian clothing prior to appearing at trial. Denied by the officer of his civilian clothing, the defendant was compelled to wear his prison-issued clothing throughout the trial, whereupon he was convicted as charged. *Estelle*, 425 U.S. at 503, 96 S.Ct. at 1692, 48 L.Ed.2d at 130.

¶21     The defendant thereafter petitioned for a writ of habeas corpus, arguing that standing trial in his prison-issued clothing was inherently unfair. *Estelle*, 425 U.S. at 503, 96 S.Ct. at 1692, 48 L.Ed.2d at 130. The United States Supreme Court examined numerous cases that, with few exceptions, determined that a defendant should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption of innocence. *Estelle*, 425 U.S. at 504, 96 S.Ct. at 1693, 48 L.Ed.2d at 130-31 (citations omitted). The Supreme Court recognized, however, the inappropriateness of a "mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb." *Estelle*, 425 U.S. at 507, 96 S.Ct. at 1694, 48 L.Ed.2d at 133.

¶22     Relevant to the instant case, Arndt made clear in her responses to defense counsel, the

State and the Court, that she believed her employment as a detention officer would have no effect on her ability to render a fair judgment. Richeson's counsel did not inquire as to whether Arndt actually did see Richeson in jail clothing, the frequency that Arndt may observe Richeson in jail clothing, nor as to what effect such observation, over time, may have upon her ability to offer a fair judgment. Given the lack of such evidence in the record, this Court could only speculate whether any such observation, if indeed it occurred, would prejudice Arndt against Richeson. What the record does reveal is that Arndt believed, from the time that the question was first asked of her, that her employment would have no effect on her ability to render a fair judgment:

> Q: Does the fact that he's in custody interfere with your ability as you see it, to be able to sit as a juror in this case?
>
> A: I don't think it would.
>
> Q: You think you would have the ability to proceed even with the knowledge that he is being held in custody?
>
> A: Uh-huh.
>
> . . . .
>
> Q: All right. Well, Ms. Arndt the bottom line here is whether or not you'll be able to give both the State and the defendant a fair trial here. [Do you think] that's something you can do . . . ?
>
> A: I can. I can do it if you ask me to, yes.
>
> Q: If you are selected you'll be given instructions to do that. Is that something that you can follow?
>
> A: Yes.

¶23    This Court has previously concluded that the bare fact that a potential juror is

9

connected with law enforcement, does not, without more, necessitate a finding of bias resulting in a dismissal for cause. *See State v. Radi* (1978), 176 Mont. 451, 460, 578 P.2d 1169, 1175 (holding that a potential juror's status as a public official, and thus legal advisee of the county attorney, does not alone disqualify a public official as a juror); *State v. Thomson* (1976), 169 Mont. 158, 163, 545 P.2d 1070, 1073 (holding that the defendant was not entitled to remove a juror for cause because of his status as a officer for the Montana Fish & Game Department without a showing of actual bias) (citing *State v. Cadotte* (1895), 17 Mont. 315, 316, 42 P. 857, 858).

¶24    We have stated that the "widest possible examination should be allowed such person in his examination as a potential juror, and should there be any doubt in the event of a challenge for cause, the trial court should resolve the doubt in favor of allowing the challenge." *Radi*, 176 Mont. at 460, 578 P.2d at 1175.  In the instant case, the District Court did grant Richeson wide latitude to question Juror Arndt, allowing questioning to occur in chambers.  In chambers, Arndt testified that she had never spoken to Richeson nor had any personal dealings with him, but was merely aware of his current status as a detainee and, notwithstanding her employment, could nonetheless follow the law and render a fair judgment.  Although this Court has stated that when voir dire examination discloses a serious question about a juror's ability to be fair and impartial, that such question should be resolved in favor of excusing that juror, Arndt's testimony simply does not reveal a state of mind in reference to Richeson that would prevent her from acting with entire impartiality and without prejudice to the substantial rights of Richeson. *See State v. Williams* (1993), 262 Mont. 530, 539, 866 P.2d 1099, 1104 (overruled on other grounds).

¶25    Furthermore, as noted by the State, this is not a similar situation as in *State v. DeVore*, 1998 MT 340, 292 Mont. 325, 972 P.2d 816, where the jurors in question spontaneously and voluntarily admitted bias against the defendant or an inability to understand or apply the presumption of innocence, and were retained by the district court only as a result of its rehabilitative efforts. *DeVore*, ¶¶ 15-20 (overruled on other grounds). In the case *sub judice*, Arndt did not remotely suggest that she would have a tendency to believe Richeson was guilty or that she would have trouble applying the presumption of innocence simply because she knew Richeson was in detention. Her spontaneous, and thus most trustworthy response, was that she could be fair and impartial. *DeVore*, ¶ 28; *State v. Good*, 2002 MT 59, ¶¶ 54-55, 309 Mont. 113, ¶¶ 54-55, 43 P.3d 948, ¶¶ 54-55. Neither did the trial court make any rehabilitative efforts. None were necessary.

¶26    Based upon all of Arndt's testimony, we conclude that the District Court properly exercised its discretion in refusing to dismiss Arndt for cause based solely on her duties as a detention officer. There exists nothing in the totality of Arndt's testimony demonstrating that she had formed an opinion on the guilt or innocence of Richeson based upon her employment, nor that her employment would cause her to harbor any actual bias one way or the other. *See Freshment*, ¶ 12; *Heath*, ¶ 16.

¶27    Richeson further alleges however, that through her employment, Arndt may also see Richeson shackled, observe his conduct and interaction with other jail guards, feel pressure from her workplace peers should she vote to acquit, and, unlike other jurors, could have continued contact with Richeson if he was convicted and returned to the detention center, knowledge that could affect her judgment and deliberations.

11

¶28 While bias must sometimes be revealed by circumstantial rather than direct evidence, *see State v. Chastain* (1997), 285 Mont. 61, 64, 947 P.2d 57, 59-60 (overruled on other grounds by *State v. Herrman*, 2003 MT 149, ¶ 33, 316 Mont. 198, ¶ 33, 70 P.3d 738, ¶ 33), Richeson here attempts to interchange circumstantial evidence with speculation. The record reveals no reason to conclude that such observations and associations would lead Juror Arndt to have a unfavorable rather than favorable opinion of Richeson. In short, Richeson's speculation falls short of establishing bias via circumstantial evidence. We thus agree with the State that the mere fact that Juror Arndt was a detention officer did not make her automatically biased against Richeson, nor does the record reflect circumstantial evidence of bias. Rather, the record reflects a person who expressed her honest belief that she could be a fair juror to both the State and Richeson.

¶29 It must be remembered that the purpose of voir dire is not only to establish grounds to dismiss a juror for cause, but also to enable counsel to intelligently exercise peremptory challenges. *See DeVore*, ¶ 30 (citing *Great Falls Tribune v. District Court* (1980), 186 Mont. 433, 440, 608 P.2d 116, 120). This is a case where no prejudice was shown but there was sufficient information for counsel to decide to use a peremptory challenge. Based on the foregoing, we hold that the District Court did not abuse its discretion in denying Richeson's motion to remove Arndt for cause.

**ISSUE TWO**

¶30 **Was Richeson's trial counsel ineffective because he did not rely on the statutory provision defining guardian-ward relationship to challenge potential Juror Arndt for cause?**

¶31 In considering ineffective assistance of counsel claims on direct appeal or in

postconviction proceedings, we apply the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.  Pursuant to the *Strickland* test, the petitioner must show that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.  In attempting to demonstrate deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.  *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

¶32     Richeson alleges that counsel's actions were deficient because he "failed to utilize the statutorily implied bias challenge for cause based on the guardian-ward relationship between a jailor and inmate" pursuant to § 46-16-115(2)(b), MCA.  Richeson argues that, as prison and jail officials must ensure that inmates receive proper clothing, shelter, food and medical care, and because Montana statutes create specific offenses and penalties for guards who mistreat or abuse inmates, that a detention center guard such as Arndt assumes the responsibility of a guardian.  Citing to *State ex rel. Middleton v. District Court* (1929), 85 Mont. 215, 278 P. 122, Richeson further argues that, as inmates are totally dependent on the state for life's basic necessities, that their status is that of a ward to the state, and thus, a ward of prison or detention guards within their prison or jail facility.

¶33     Richeson thus contends that no tactical reason could exist for failing to use a

13

statutorily defined bias to help remove a juror where defense counsel has already moved to strike the juror for cause. Richeson asserts that a citation to § 46-16-115(2)(b), MCA, "would have forced the court to determine whether a guardian-ward relationship existed," and, assuming it found such a relationship, it then would have been required to grant Richeson's motion to remove Arndt for cause.

¶34 We agree with Richeson that the statutes and case law requiring correctional facilities to meet the basic needs of prisoners serve to benefit the prisoners and society as a whole. However, notwithstanding that the law requires certain standards from correctional facilities and individual guards and detention officers, such standards, no matter how strict, do not create an implied guardian-ward relationship between prisoners and individual guards.

¶35 A guardianship is a creature of the law and a guardian maintains no authority, rights or duties except those conferred or imposed by the law. Montana law authorizes numerous types of guardianships. *See* § 40-4-205, MCA (authorizing the court in subsection (1) to appoint an attorney to represent a minor in a proceeding for the dissolution of marriage, legal separation, or other proceeding involving child support, custody and visitation, and delineating specific duties and authority of the guardian in subsections (2)(3) & (4)); Section 41-3-112, MCA (requiring appointment of guardian ad litem in child abuse and neglect proceedings and outlining duties and authority); Section 41-3-444, MCA (authorizing appointment of additional guardian in abuse and neglect proceedings and delineating duties and authority); *also see generally* Title 72, Section 5, Part 2 (authorizing testamentary and court-appointed guardians for minors in addition to delineating duties and qualifications) and Title 72, Section 5, Part 3 (delineating purpose and authorizing powers and duties for the

guardian of an incapacitated person).

¶36   Nowhere does Montana law authorize, much less create, a guardian-ward relationship between individual guards or officers and detainees. Moreover, the basic nature of a guardianship of an incapacitated person requires court involvement, as a determination of incapacitation must be made prior to the appointment of a guardian. Section 72-5-101(1), MCA, defines "incapacitated person" as follows:

> "Incapacitated person" means any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, or other cause (except minority) to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person or which cause has so impaired the person's judgment that he is incapable of realizing and making a rational decision with respect to his need for treatment.

¶37   Not only may the legislature regulate and define duties and obligations of guardians, but the guardian must also submit personally to the jurisdiction of the court in any proceeding relating to the guardianship, and the guardianship continues even if the guardian moves. *See*, *e.g.*, § 72-5-202(1) & (2), MCA. A guardian may apply to the court for instructions or the construction of written instruments connected with the discharge of the guardian's duties. Likewise, a ward may apply to the court for the removal of a guardian or the guardian may petition the court to accept his or her resignation. The court may grant the request if, after a hearing, the court determines that removal of the guardian is in the best interests of the ward. *See* § 72-5-325(1), MCA.

¶38   In the case of a prisoner, there is no prior judicial determination as to whether such person falls under the statutory definition of "incapacitated person," nor is there an appointment of a guardian who is under the direct supervision of the court. A prison guard

15

or detention officer may not apply to the court for instructions or aid in constructing a legal document on behalf of any detainee, nor is there any process by which a guard, detention officer or prisoner may apply to the court for a termination of such alleged guardianship duties.

¶39 We thus conclude that, notwithstanding any constitutional or statutory responsibilities a detention officer or guard may have toward a detainee, such responsibilities do not meet the requirements of a guardian-ward relationship. Given this conclusion, we hold that Richeson's counsel did not fall below an objective standard of reasonableness, and thus, did not provide ineffective assistance of counsel in not moving to challenge Arndt for cause under § 46-16-115(2)(b), MCA.

¶40 The decision of the District Court is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM REGNIER

16

Justice W. William Leaphart dissenting.

¶41 I dissent on the question of whether the District Court erred in denying Richeson's challenge for cause to juror Arndt.

¶42 During voir dire examination, prospective juror Arndt was asked: "If you were sitting in Mr. Richeson's place and you were sitting on the jury knowing what you know about Mr. Richeson, would you want yourself on the jury?" Her unequivocal answer was "No." We have held that "should there be any doubt in the event of a challenge for cause, the trial court should resolve the doubt in favor of allowing the challenge." *State v. Radi* (1978), 176 Mont. 451, 460, 578 P.2d 1169, 1175.

¶43 Arndt's negative answer, particularly given that she was employed as a detention officer at the facility where Richeson was jailed, is more than sufficient to raise a doubt as to whether she had a state of mind in reference to Richeson that would prevent her from acting with entire impartiality and without prejudice to his substantial rights. Section 46-16-115(2)(j), MCA. The District Court should clearly have resolved that doubt in favor of allowing the challenge and excused Arndt for cause.

/S/ W. WILLIAM LEAPHART