No. 05-002

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 91

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

KATHLEEN MICHELE GOLIE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DC 03-91
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Christopher Daly, Attorney at Law, Missoula, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; C. Mark Fowler,
                Assistant Attorney General, Helena, Montana

                Fred Van Valkenburg, Missoula County Attorney; Kirsten LaCroix,
                Deputy County Attorney, Missoula, Montana

                          Submitted on Briefs:  February 7, 2006

                                    Decided:  May 2, 2006

Filed:

                _____
                              Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Kathleen Michele Golie appeals from the judgment and sentence entered by the Fourth Judicial District Court, Missoula County, upon a jury verdict convicting her of the felony offense of operating a motor vehicle while under the influence of alcohol or drugs. We reverse and remand for further proceedings consistent with this opinion.

¶2     The dispositive issue on appeal is whether the District Court abused its discretion by denying Golie's challenge of a prospective juror for cause.

## BACKGROUND

¶3     The State of Montana charged Golie by information with the felony offense of operating a motor vehicle while under the influence of alcohol or drugs (DUI). The State also charged Golie with misdemeanor offenses to which she eventually pled guilty; the misdemeanors are not at issue here. The case proceeded to trial on the felony charge.

¶4     During jury voir dire, prospective juror John Lundt revealed the issue of DUI was a "sore subject" for him because, in 1969, he had been injured by a drunk driver who was never prosecuted. After subsequent questioning, defense counsel challenged him for cause and the District Court denied the challenge. Later, after additional statements by Lundt, defense counsel renewed the challenge for cause and the court again denied it.

¶5     Golie exercised one peremptory challenge to remove Lundt and exhausted all of her peremptory challenges. The jury was selected, the parties presented their cases, and the jury convicted Golie of DUI. The District Court subsequently entered judgment and sentence. Golie appeals. We set forth additional facts below.

2

## STANDARD OF REVIEW

¶6 We review a trial court's denial of a challenge for cause to determine whether the trial court abused its discretion. *State v. Marble*, 2005 MT 208, ¶ 10, 328 Mont. 223, ¶ 10, 119 P.3d 88, ¶ 10 (citation omitted).

## DISCUSSION

¶7 *Did the District Court abuse its discretion in denying Golie's challenge to a prospective juror for cause?*

¶8 Section 46-16-115(2), MCA, sets forth the bases for challenging potential jurors for cause in Montana criminal cases. One specified basis is that a juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. A challenge under § 46-16-115(2)(j), MCA, must be determined pursuant to both the statutory language and the totality of the circumstances presented. *State v. Heath*, 2004 MT 58, ¶ 16, 320 Mont. 211, ¶ 16, 89 P.3d 947, ¶ 16. If voir dire examination raises a serious question about a prospective juror's ability to be fair and impartial, dismissal for cause is favored. *State v. Richeson*, 2004 MT 113, ¶ 14, 321 Mont. 126, ¶ 14, 89 P.3d 958, ¶ 14 (citation omitted).

¶9 Golie argues Lundt demonstrated bias by his statements regarding his unresolved DUI-related experience. We agree.

¶10 We have acknowledged that a prospective juror's past experiences and characteristics may not necessarily affect his or her ability to remain impartial; however, we also have recognized a "'fundamental fact of human character'" is that people are "'prone to favor that

3

side of a cause with which they identify themselves either economically, socially, or emotionally.'" *See State v. Lamere*, 2005 MT 118, ¶ 17, 327 Mont. 115, ¶ 17, 112 P.3d 1005, ¶ 17 (quoting *State v. Chastain* (1997), 285 Mont. 61, 64, 947 P.2d 57, 59-60, *overruled on other grounds by State v. Herrman*, 2003 MT 149, ¶ 33, 316 Mont. 198, ¶ 33, 70 P.2d 738, ¶ 33). In determining whether a serious question has arisen regarding a prospective juror's ability to be fair and impartial, we review his or her responses as a whole. *See Heath*, ¶ 18 (citation omitted).

¶11     Here, the prosecutor asked various prospective jurors whether they could think of a situation in which it would be "okay" to drive while under the influence and whether the DUI laws were too strict. The prospective jurors responded. Then, the following exchange occurred between the prosecutor and Lundt:

> MS. LaCROIX:  You've been kind of quiet.
>
> JUROR LUNDT:  This is kind of a sore subject for me.  I would say I was injured by a drunk driver.  My left arm was shattered.  The person in question was a well-to-do son of an attorney who sent the young lad to Europe to avoid prosecution.  It's kind of a sore subject for me.
>
> MS. LaCROIX:  Really.  How long ago was that?
>
> JUROR LUNDT:  1969.
>
> MS. LaCROIX:  And was the person ever brought to justice?
>
> JUROR LUNDT:  Never.
>
> MS. LaCROIX:  So—yeah, you have every reason to be angry.
>
> JUROR LUNDT:  (The juror nodded his head.)
>
> MS. LaCROIX:  Probably at everybody involved.

4

JUROR LUNDT:  Both drunk drivers and attorneys.  Not, you know, in a wholesale sense but I had issues with all those involved.

MS. LaCROIX:  We get that a lot.  I like to tell people when they're railing on attorneys, you know, I'm really not an attorney.  I'm a prosecutor.  We're a little bit different but—

THE COURT:  I don't have an instruction on that so.

MS. LaCROIX:  –I won't say what I'm thinking.  Thank you for your candor.  Would you be able to sit and listen to the—my officers testifying about what they saw Ms. Golie doing and could you be fair to—to the state and could you be fair to Ms. Golie?

JUROR LUNDT:  Probably.

The prosecutor then questioned Lundt about his profession and family.

¶12    Later, Golie's counsel questioned Lundt as follows.

MS. BORG:  Mr. Lundt, let me start by going back to your concerns here, the sore subject if you would.  As Kathleen Golie's attorney, what I'm looking for today are people that can be unbiased and unprejudiced in this case, and this is a driving-while-impaired case.  With your life experience, are you that guy?  Are you unbiased and unprejudiced in this case?

JUROR LUNDT:  Probably in this case.

MS. BORG:  Okay.  Now neither Ms. LaCroix nor I can change the fact that—that we're attorneys.  We're stuck with that, but we need to be very clear here that Kathleen Golie is presumed innocent, and jurors can't bring with them anything that would skew that perception or bring a bias and a prejudice, and as I heard you talk about the sore subject my little red flags went up.  How can you guarantee you have no biases or prejudices in this case?

JUROR LUNDT:  I can't.

MS. BORG:  Okay.  If you were on trial for a DUI, would you want to be judged by a juror that felt like you?

JUROR LUNDT:  Absolutely not.

5

MS. BORG:  Okay.  And can you put that in words for me?  Why is that?

JUROR LUNDT:  I would be concerned about residual feelings concerning the subject at hand.

MS. BORG:  Okay.  I don't want to put words in your mouth.  The judge has to hear this from you, but are you telling me that in this case you can't guarantee no bias and no prejudice?

JUROR LUNDT:  Can you restate that?

MS. BORG:  Can you promise me you have no bias and prejudice in this case either for the state or against the defendant?

JUROR LUNDT:  I have no bias against the state.  I'm—I'm concerned about the State of Montana and its approach to this issue which I think has been sophomoric for years.  I don't have a strong prejudice against attorneys in general.  There are a few I'm not fond of for obvious reasons, but I don't paint the entire profession, toggle them all with the same brush.  This is a subject that is of great concern to me.  The person in question was not obviously driving the car that hit me; wasn't even born yet.  It—it's just an emotional issue for me.

MS. BORG:  I understand that, and I'm looking for jurors on behalf of Kathleen Golie that don't have that emotional issue or that emotional charge that they bring to the panel.

JUROR LUNDT:  And you'd probably be better to select someone else.

MS. BORG:  Well, I appreciate that, but I have to have you say that so that I can ask the judge to excuse you for cause.

JUROR LUNDT:  What—what—what do you want me to say?

MS. BORG:  I can't quite go there.  I want you to tell me whether you can be unbiased and unprejudiced in this case.

JUROR LUNDT:  I don't think I would be your best choice.

MS. BORG:  Okay.  Should you be excused for cause?

6

JUROR LUNDT:  I don't know.  What are the causes?

MS. BORG:  Well, I'm trying to get you tell [sic] me that.  I hear you say you can't guarantee that you wouldn't be biased or prejudiced in this case, right?

JUROR LUNDT:  I think that this would be an emotionally charged issue for me in terms of being dishonest or—or prejudiced or—or ignoring evidence.  I don't think that's the case at all.  It's just a situation in which if I had not been involved in that type of—of an incident it would be much easier for me to participate and probably a lot easier for all of you folks also.

MS. BORG:  I don't think anyone would—would want to leave you with the impression we think you would be dishonest or do anything inappropriate.  What we're looking for is jurors don't come in with loaded emotional issues that might influence how they would deliberate this case.

Everybody's the perfect juror for some case, not everybody is the perfect juror for this case, and I'm hearing you say that you're not the right guy for this case?

JUROR LUNDT:  I don't think I would be the best selection for this case.

MS. BORG:  Okay.  And I also hear you say that—that that might prejudice the defendant in this case.

JUROR LUNDT:  I think it would make her nervous.  Were I in her position listening to me I would be uncomfortable.

MS. BORG:  Okay.  And it might even prejudice the state.  You said something about you thought they were sophomoric about their—the way they deal with DUIs?

JUROR LUNDT:  I think the—no, not necessarily DUIs.  I think the laws in the state of Montana in which you could actively drink and drive at the same time, which I guess have been changed recently, but when I first moved here I was absolutely floored to see people drinking and driving and to realize that they were not in violation of the law having come from—lived in several states where even having an open container was a violation of the law.  I found the laws here to be shocking.  Rather backward.

MS. BORG:  Okay.

JUROR LUNDT:  Dangerous.

7

MS. BORG: Okay. And then back to my trading-places question. I heard you say that if you were on trial as Kathleen Golie is you would not want to be judged by someone who had your opinions in this case; is that correct?

JUROR LUNDT: I'd feel more comfortable with someone who had not had an unpleasant experience in the exact same arena.

MS. BORG: Judge, I'm going to ask Mr. Lundt be excused for cause in this case.

¶13 The prosecutor objected and the District Court asked if she wished to ask further questions. The prosecutor stated, "I do not, Your Honor. I think he's indicated he may not be her best choice but certainly has not met the level of bias or prejudice as required." The court asked defense counsel if she had anything to add, and she replied,

No, Judge. I would argue that I may not be as—as articulate as I need to to [sic] get the exact words out but I think he continues to tell me that he has bias and prejudices, that he would not want to be judged by someone like him in a case like this, and I believe that that reaches the level of a for cause objection.

The District Court denied Golie's challenge for cause.

¶14 Toward the end of voir dire, the following exchange occurred:

MS. BORG: My last question is the trading-places question. I want you all to think here for just a sec. If I was on trial in this case, would I want to be judged by a person just like me? Is there anybody on the panel that would be uncomfortable knowing what they know about themselves or the things they think about this case being judged by someone just like them if they were on trial? Mr. Lundt. Why?

JUROR LUNDT: I think we already discussed this.

MS. BORG: I think we did, and we didn't get where we needed to go with that. I'd love to be able to ask the judge to excuse you for cause because I believe that you have given us cause, but Ms. LaCroix doesn't think you have, and the judge hasn't heard enough cause yet. So what is the cause that you can't be the right juror in this case?

8

JUROR LUNDT: Well, that's not the question you asked. You asked why would she be uncomfortable or why would I if I were trading places and that's simply because—

MS. BORG: Help me out here.

JUROR LUNDT: —I would rather have somebody who had no experience in that area and maybe wasn't bringing anything to the table because of their past experience.

MS. BORG: It's the issue of what you bring to the table in this case that's out there, right?

JUROR LUNDT: I believe so.

MS. BORG: Okay. And how—how will what you bring to the table impact your ability to be a fair and impartial juror in this case?

JUROR LUNDT: I'm not sure that—that it will entirely. It's just that were I in this hypothetical situation you're describing I would be nervous being, you know, at that table—

MS. BORG: Why?

JUROR LUNDT: —dealing with this because of the—the relatively bad experience that the other person had had in a very similar or at least potentially similar situation.

MS. BORG: And—and what—what would the impact be? Would you—how—how would your experience influence how you would be a juror in this case?

JUROR LUNDT: I think I would—I would consider the fact that the person involved had an unresolved situation and that they might carry part of that baggage with them. The anger of—of that not being resolved, it would make me nervous.

MS. BORG: Okay. So we're talking about your—your anger about the issue of DUI and the fact that you have unresolved issues in—in this arena.

JUROR LUNDT: (The juror nodded his head.)

9

MS. BORG:  That you might somehow—those experiences might bias how you judge Kathleen Golie?

JUROR LUNDT:  I think that would worry me were I her if that's what you're asking.

MS. BORG:  And I take it that would bias her or be somehow negative to her best interests.

JUROR LUNDT:  I—I think it would be something that probably would or should be in the back of her mind as a concern.

MS. BORG:  Okay.  So you're telling me that in this case you are not unbiased or unprejudiced with regard to the defendant.

JUROR LUNDT:  No.  You're—you're rearranging what I'm saying.

MS. BORG:  I don't want to rearrange what you're saying but I'm having a hard time—

JUROR LUNDT:  You're having a hard time getting where you want to go.  I have no feelings about this person at all.  I have serious issues with the—the overall issue of—of the irresponsibility that goes with driving while impaired.  That's a—a very passionate concern for me, not necessarily connected, you know, to this person who I've never seen before I walked in here but—but it is a relatively sore subject for me and—and one that I am very emotionally involved with.

MS. BORG:  And what I need to know is will that—will that potentially negatively impact Kathleen Golie?

JUROR LUNDT:  I would like to think it wouldn't, but I don't know.

MS. BORG:  Okay.  Judge, I am going to renew my request that Mr. Lundt be excused for cause.

THE COURT:  And subject to that, do you pass the remaining panel?

MS. BORG:  Yes, sir.

THE COURT:  So I again deny the request[.]

10

¶15 Lundt's early response characterized the issue of DUI as a "sore subject" for him since 1969. He consistently referred to his strong emotions about the subject. When asked how what he "brought to the table" would impact his ability to be fair and impartial, he stated he was "not sure that—that it will entirely." Ultimately, he stated he did not know if his "passionate concern" about the "sore subject . . . one that [he was] very emotionally involved with" would negatively impact Golie. These statements raised a serious question about Lundt's ability to be fair and impartial. *See Richeson*, ¶ 14. Moreover, Lundt's responses establish he had a state of mind in reference to the case that would prevent him from acting with entire impartiality and without prejudice to Golie's substantial rights, as set forth in § 46-16-115(2)(j), MCA.

¶16 The State argues, however, that this case is factually distinguishable from previous cases in which we determined the trial court abused its discretion by denying a challenge for cause. It asserts that, unlike *State v. Williams* (1993), 262 Mont. 530, 534-36, 866 P.2d 1099, 1101-02, *overruled on other grounds by State v. Good*, 2002 MT 59, ¶ 63, 309 Mont. 113, ¶ 63, 43 P.3d 948, ¶ 63, Lundt did not repeatedly express concern about his ability to be impartial, was not a friend of any witness, did not live in the neighborhood of the alleged crime scene, did not form an opinion based on news coverage and did not recently serve as a juror in a similar case. The State also distinguishes *State v. DeVore*, 1998 MT 340, 292 Mont. 325, 972 P.2d 816, *overruled on other grounds by Good*, ¶ 63, noting Lundt did not state a belief that Golie was "guilty of something" simply because she was charged. Distinguishing *Good*, apparently regarding prospective jurors' stated difficulty in believing a

11

young alleged sexual abuse victim would lie and in waiting until submission of the case to make a decision, the State cites to Lundt's statement he would not ignore evidence and contends he indicated he would judge the facts.

¶17     In the past, we have reasoned that—despite factual distinctions from prior cases—the questions remain whether the prospective juror has a state of mind preventing him or her from acting impartially and without prejudice to a party's substantial rights, or whether the prospective juror's statements have raised a serious question about his or her ability to be impartial.  For example, in *DeVore*, ¶ 25, after addressing the factual distinctions between that case and *Williams*, we stated "[a]lthough the facts are different, the issues in *Williams* and this case are the same."  Similarly, in *Good*, ¶¶ 52-53, we acknowledged the prospective jurors in that case had not expressed a belief that the defendant was "guilty of something," as did the prospective jurors in *DeVore*; however, we concluded their belief that an alleged teenage victim would not lie about sexual abuse raised a serious question about their ability to be impartial and afford the presumption of innocence.

¶18     It is hardly surprising that the statements at issue here differ from those in past cases addressed by this Court.  Prosecutors and defense counsel in different cases may not ask—or follow up on—identical questions during voir dire, and prospective jurors in different cases are highly unlikely to respond with precisely the same answers.  Our prior decisions establish only whether particular responses have indicated bias or raised a serious question of impartiality.  Those cases provide guidance to litigants and trial judges, but a "one size fits all" rule defining all possible factual circumstances justifying a challenge for cause simply is

12

not feasible. Ultimately, despite factual distinctions, the issues in "challenge for cause" cases under § 46-16-115(2)(j), MCA, remain constant: whether a prospective juror's statements have demonstrated a "state of mind" affecting his or her ability to be impartial and act without prejudice to either party, and whether a "serious question" has arisen in that regard. Where, as in this case, the answer to either or both inquiries is in the affirmative, dismissal for cause is favored. *See Richeson*, ¶¶ 14-15.

¶19     Next, citing to *State v. Freshment*, 2002 MT 61, 309 Mont. 154, 43 P.3d 968, the State argues Lundt did not state "an actual bias directly related to an issue critical to the outcome of the case." In *Freshment*, ¶ 16, we applied "critical issue" language to prospective jurors' statements of unwillingness to acquit a defendant if he established a legal affirmative defense. We also used "critical issue" language in *State v. Burkhart*, 2004 MT 372, ¶ 53, 325 Mont. 27, ¶ 53, 103 P.3d 1037, ¶ 53, regarding a prospective juror's statements that he could not apply a law with which he disagreed even if instructed to do so. The "critical issue" language was appropriate and useful in those cases, but did not create an additional requirement for establishing a challenge for cause under § 46-16-115(2)(j), MCA. "Critical issue" language in prior cases is simply not relevant to our determinations here that Lundt's statements met the "state of mind" requirement of § 46-16-115(2)(j), MCA, and raised a serious question about his ability to be impartial.

¶20     The State also argues this case is similar to *Heath*, ¶ 31, where we determined a defendant's unsupported speculation regarding a prospective juror's emotional involvement fell far short of establishing bias via circumstantial evidence. In this regard, the State

13

contends Lundt described his DUI injury as merely "an unpleasant experience" and emphasizes his statement that Golie was not driving the car that hit him.

¶21 In *Heath*, ¶ 31, we rejected as "purely speculative" the defendant's argument that a prospective juror "would have developed substantial emotional involvement" in her prior work as a rape survivor advocate and "it would only be natural" for her to identify with the alleged victim in a sexual intercourse without consent case. Similarly, in *Richeson*, ¶¶ 27-28, we rejected as "speculation" the defendant's argument that a detention officer's judgment and deliberations as a juror would have been affected by her observations of the defendant in jail before trial, pressure from workplace peers and knowledge that the defendant could return to the jail if convicted. Unlike the arguments in *Heath* and *Richeson*, Golie's argument is not speculative. It is supported by Lundt's statements that he was very emotional about his decades-old unresolved DUI-related incident and did not know if—or to what extent—his emotions would negatively impact Golie.

¶22 With respect to Lundt's description of his past DUI-related incident as "unpleasant," we review the totality of a prospective juror's responses to determine whether they raised a serious question about his or her ability to be fair and impartial. *See Heath*, ¶ 18. Viewed in context, Lundt's characterization of his past experience as "unpleasant" is simply one of many expressions of his negative feelings about DUI, not a contradiction of them.

¶23 The State also observes, correctly, that some of Lundt's statements were responses to defense counsel's questions asking him to place himself in Golie's position. In *Heath*, ¶ 25, we noted the defendant had not presented authority for the proposition that a prospective

14

juror's statement that a defendant might not want him or her on the jury constitutes actual bias or an inappropriate state of mind under § 46-16-115(2)(j), MCA. The same is true here. However, we have already set forth Lundt's responses raising a serious question about his ability to be fair and impartial and establishing the "state of mind" criterion in § 46-16-115(2)(j), MCA. The record reflects Lundt was speaking from his own perspective when he made these statements. Thus, his separate responses to "trading places" questions have no bearing on our analysis here.

¶24 Emphasizing Lundt's "probably" responses when asked by the prosecutor and defense counsel whether he could be fair, unbiased and unprejudiced, the State characterizes those responses as Lundt's initial statements regarding bias. It advances this Court's emphasis on a prospective juror's spontaneous, and usually initial, statements in evaluating whether he or she has expressed a "fixed opinion" regarding a defendant's innocence or guilt. *See, e.g.*, *State v. Falls Down*, 2003 MT 300, ¶¶ 27, 30, 32, 35, 318 Mont. 219, ¶¶ 27, 30, 32, 35, 79 P.3d 797, ¶¶ 27, 30, 32, 35.

¶25 The "fixed opinion" rule is only one argument that may be made under the "state of mind" basis for a challenge for cause set forth in § 46-16-115(2)(j), MCA. *Heath*, ¶¶ 11-16. Here, Golie's argument is not that Lundt expressed a "fixed opinion" regarding her guilt or innocence, but that he demonstrated a "state of mind" indicating bias—that which would prevent him from acting impartially and without prejudice to her substantial rights, as set forth in § 46-16-115(2)(j), MCA. Thus, the "fixed opinion" rule and *Falls Down*—which concerns only the "fixed opinion" rule—are not relevant here.

15

¶26   The State is correct, however, that we emphasize initial statements or responses with respect to challenges based on § 46-16-115(2)(j), MCA. *See Heath*, ¶ 25. Here, Lundt's "probably" responses were not his initial statements about his state of mind. In fact, Lundt's first "probably" response occurred *after* he volunteered DUI was a "sore subject" due to his past experience, nodded at the comment that he had every reason to be angry, and expressed anger at drunk drivers and the attorneys involved in the prior incident. Lundt's first "probably" answer also was in response to the prosecutor's comment that she was "really not an attorney" and question about whether he could listen to officers and be "fair." Lundt's "probably" response to defense counsel occurred even later. Given the dialogue before and between the "probably" responses, those responses cannot properly be characterized as Lundt's initial statements. Thus, we need not address the State's assertion that defense counsel manipulated Lundt's "probably" responses, because the "manipulation" analysis pertains only to initial statements. *See Heath*, ¶ 25.

¶27   Finally, the State contends this Court may not substitute its judgment for a trial court's determination of a prospective juror's demeanor, expression and manner. It relies on *Williams*, 262 Mont. at 536, 866 P.2d at 1102 (quoting *State v. Allison* (1948), 122 Mont. 120, 129-30, 199 P.2d 279, 285-86), for the proposition that, although the statements of a person "who has first said 'no' and then said 'yes'" require careful scrutiny, it is within the province of the trial court to determine "where the truth lies." Lundt stated consistently that he was emotional about DUI and admitted he did not know whether his emotions would prejudice Golie. Thus, the present case does not involve a "no, then yes" situation; nor does

16

it involve a question of where the truth lies.

¶28    We conclude Lundt's responses raised a serious question about his ability to be fair and impartial.  We also conclude, pursuant to § 46-16-115(2)(j), MCA, that his responses establish he had a state of mind in reference to the case that would prevent him from acting with entire impartiality and without prejudice to Golie's substantial rights.

¶29    We take this opportunity to remind trial courts that our decisions favoring dismissals for cause—when a nonspeculative "serious question" arises about a prospective juror's ability to be fair and impartial—are premised upon both the constitutional right to a trial by an impartial jury and the significant expense and inconvenience that results from retrial.  *See Richeson*, ¶ 14.  When a district court abuses its discretion in denying a defendant's challenge for cause, the defendant uses a peremptory challenge to remove the disputed prospective juror, and the defendant exhausts all peremptory challenges, structural error requiring automatic reversal results.  *Heath*, ¶ 7 (citation omitted).  It is fair to say that the failure to grant a valid challenge for cause negatively impacts the overall administration of justice.

¶30    We hold the District Court abused its discretion in denying Golie's challenge for cause.  Because it is undisputed that Golie exercised a peremptory challenge to remove Lundt and exhausted all of her peremptory challenges, we further hold this structural error mandates automatic reversal.

¶31    Reversed and remanded for further proceedings consistent with this opinion.

17

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JOHN WARNER